369 So.2d 623 (1979)
STATE of Florida, Appellant,
v.
Eduardo LOPEZ, Appellee.
No. 78-1386.
District Court of Appeal of Florida, Second District.
March 9, 1979.
Rehearing Denied April 9, 1979.
Robert L. Shevin, Atty. Gen., Tallahassee, and C. Marie King, Asst. Atty. Gen., Tampa, for appellant.
Emilio De La Cal, Miami, for appellee.
GRIMES, Chief Judge.
This is an appeal from an order suppressing physical evidence.
The facts of the case, as presented through testimony given at the suppression hearing, are not in dispute. At about 10:25 p.m. on December 13, 1977, William Simmons, a security guard at the Remuda Ranch in Collier County, saw three trucks turning east off an old tram road which ran through the ranch onto Highway 41. The first was a yellow Ryder rental truck. Simmons immediately called the Collier County Sheriff's Department and relayed his sighting to Deputy Sanders.
*624 Sanders was familiar with the road of which Simmons spoke. It ended at a canal that connected with the Gulf of Mexico and had been the scene of several marijuana smuggling operations. Sanders relayed his information to Deputy Pent who was patrolling Highway 41 at the time. Pent spotted a yellow Ryder truck heading east and followed it. The truck was travelling between sixty and sixty-five miles per hour and swerving because a cap had come off one of the tires. Pent signaled the driver of the truck to stop. The truck continued for another mile and a half and then pulled off on the shoulder of the road.
The area in which the truck stopped was dark. As the driver (appellee) got out of the truck, Pent saw him move his right hand toward his rear pocket. Because of this action Pent drew his revolver and ordered appellee to place his hands over his head and walk to the rear of the truck. Appellee complied with this order, but as he reached the rear of the truck, he fainted and fell to the ground. The deputy ordered him to get up but as he tried to do so, he fell again in a faint. Pent then frisked him on the ground, handcuffed him and placed him in his patrol car. Pent described appellee as sweated, disheveled and tired. He also said that appellee's pants legs were wet.
Deputy Pent noticed that the truck was heavily loaded. After appellee had revived, Pent asked him what was in the truck. Appellee replied that the truck carried driftwood which he had collected at the Remuda Ranch. Pent then asked appellee if he could search the back of the truck. Appellee said that he could and said that the key was in the ashtray or on the dashboard. Pent was unable to find the key in either place.
At this point, Deputy Sanders arrived on the scene. Sanders smelled the odor of marijuana in the truck. He too was unable to locate the key to the truck and, like Pent, he noticed that the truck was heavily loaded. He knew driftwood, even when wet, was not heavy enough to so weigh down the truck. Sanders also noticed a white sand peculiar to the Remuda Ranch area on the truck. He asked appellee to look for the key to the back of the truck. Appellee went through the motions of looking for it and then reported that he did not have it.
Lieutenant Keene then came to the scene, and he and Deputy Sanders drove to the Remuda Ranch. Once there, they located the tracks of dual wheel vehicles coming out of the tram road. Driving along they found reflectors stuck into the ground and plywood and wire mesh lying along the way. As they proceeded further they spotted a Hertz rental truck and several people fleeing into the swampy area around the canal. Through the open doors of the truck they saw a load of marijuana. They also found a Ford pickup nearby which contained a radio antenna, a pair of binoculars, a large chain and a swivel block.
At some point during his journey down the Remuda Ranch road, Lieutenant Keene called Deputy Pent and told him to bring appellee and his truck to the ranch. By the time Pent arrived, Keene and Sanders had found all the evidence of a marijuana smuggling operation. Because of this, they broke the lock on the doors at the back of appellee's truck and found a load of marijuana which became the object of appellee's motion to suppress.
After hearing the evidence the court found that the initial stop of appellee's truck was proper because Deputy Pent had a well-founded suspicion of criminal activity. The court also found that the officers had probable cause to search the truck at the time they opened it. However, the court ruled that in order to move the truck from the point at which it was stopped to the Remuda Ranch, the officers had to have probable cause to search and that at this time the officers did not have probable cause. Hence, the court granted the motion to suppress.
We agree that Deputy Pent had a well-founded suspicion of criminal activity sufficient to allow him to stop appellee's truck. State v. Payton, 344 So.2d 648 (Fla. 2d DCA 1977); State v. Othen, 300 So.2d 732 (Fla. 2d DCA 1974). The facts noted *625 with respect to the truck after it was stopped together with appellee's behavior tended to corroborate this suspicion. At the very least, the circumstances then known to the deputies were sufficient to permit them to detain the truck and its driver for the reasonable length of time necessary to verify appellee's story by visiting the scene at the ranch where the truck had been. See State v. Bastardo, 347 So.2d 463 (Fla. 2d DCA 1977). Under these circumstances it was of little consequence whether the truck was held by the side of the road or driven back to the ranch. By the time the truck was opened the deputies had discovered first-hand evidence of the marijuana smuggling operation, so there was ample probable cause to believe that the truck contained marijuana. In the case of motor vehicles, if probable cause exists there is no prohibition to conducting a search and seizure without a search warrant either at the scene or back at the police station. Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
In view of the position we have taken,[1] it is unnecessary for us to pass on the court's determination that the officers did not have probable cause to search the truck before it was moved. The order of suppression is reversed and the case is remanded for further proceedings.
HOBSON and BOARDMAN, JJ., concur.
NOTES
[1] There is an alternative basis upon which this search could be upheld. By the time the deputies had concluded their investigation of the truck by the side of the road, the appellee had already fainted twice. Deputy Pent testified that appellee was not capable of driving the truck in his condition. Therefore, even if the deputies were no longer suspicious that the truck was carrying contraband, they would have been remiss in their duties to permit appellee to continue to drive on the public highways. Thus, the truck would have still been in their hands at the time probable cause was established.