388 So.2d 1017 (1980)
STATE of Florida, Petitioner,
v.
Miguel SEGARRA, Respondent.
No. 54928.
Supreme Court of Florida.
September 4, 1980.
Rehearing Denied October 30, 1980.
Jim Smith, Atty. Gen. and Margarita Esquiroz and Steven L. Bolotin, Asst. Attys. Gen., Miami, for petitioner.
Bennett H. Brummer, Public Defender, and Beth C. Weitzner, Asst. Public Defender, Miami, for respondent.
ADKINS, Justice.
By petition for certiorari we have for review a decision of the Third District Court of Appeal Segarra v. State, 360 So.2d 79 (Fla.3d DCA 1978), which allegedly conflicts with a prior decision of another district court of appeal Mulder v. State, 356 So.2d 870 (Fla.4th DCA 1978), on the same point of law. Art. V, section 3(b)(3), Fla. Const.
The defendant, Segarra, was charged with burglary, a second degree felony carrying a maximum sentence of fifteen years. Plea negotiation resulted in a plea of guilty with a five-year cap in possible sentence. After a presentence investigation the trial court sentenced defendant to five years probation with two conditions, one of which defendant violated. The trial court revoked defendant's probation and sentenced defendant to fifteen years. The district court of appeal reversed this decision and held that the maximum sentence which the court could impose upon violation of the probation was five years. The court pointed out that there had been an agreed maximum sentence of five years as part of plea negotiations which was accepted and approved by the defendant, the prosecutor and the judge.
In Mulder v. State, supra, the defendant, after plea negotiations, entered a plea of guilty with an agreement that the maximum sentence to be imposed would be for a two-year term. The trial judge placed defendant on probation. Defendant violated the conditions and, upon revocation of probation, was sentenced to three years incarceration. The district court of appeal affirmed and referred to section 948.06(1), Florida Statutes (1975), which provides that after probation has been revoked the trial judge can "impose any sentence which it might have originally imposed before placing the probationer on probation." In its opinion the Court said:
Accepting appellant's contentions would lead to absurd results. If the original plea negotiations including [sic] an understanding that a defendant would be *1018 placed on probation, and the court agreed, the court would then be unable to impose any prison sentence in the event probation was subsequently revoked. It cannot be said that the legislature intended to leave society without any recourse against those defendants who receive the benefit of the court's mercy by being placed on probation and, subsequently, violate the terms thereof.
Appellant, having violated the terms of his probation, cannot now be heard to argue that the State is bound by the terms of an agreement which resulted in the initial imposition of probation.
356 So.2d at 871.
In Johnson v. State, 378 So.2d 335 (Fla.2d DCA 1980), defendant pled guilty pursuant to a plea bargain under which he was to receive no more than concurrent sentences of five years on both charges. At the sentencing hearing defendant's attorney requested that he receive another chance. The court placed defendant on probation but admonished him that if revocation became necessary it might imprison him for a period of up to twenty years. A year and a half later the defendant violated his probation. The court revoked probation and sentenced him to concurrent five and ten-year terms. Upon appeal, this judgment and sentence was affirmed, the court saying:
The third district court of appeal has held that since the punishment received by a probation violator is imposed under the original charge, this punishment cannot be in excess of the terms of the bargain upon which the defendant first entered a plea. Payne v. State, 372 So.2d 152 (Fla.3d DCA 1979); Overman v. State, 368 So.2d 434 (Fla.3d DCA 1979); Kord v. State, 361 So.2d 800 (Fla.3d DCA 1978); Segarra v. State, 360 So.2d 79 (Fla.3d DCA 1978). The fourth district court of appeal held to the contrary in Mulder v. State, 356 So.2d 870 (Fla.4th DCA 1978).
As between the two views, we opt for the position taken by the fourth district court of appeal. So long as the order of probation was within the terms of the agreement, the court has fulfilled the plea bargain. The events which bring about a revocation open a new chapter in which the court ought to be able to mete out any punishment within the limits prescribed for the crime.
In a different context the supreme court has held that the conduct of a defendant which leads to a probation revocation may be such as to allow the imposition of a greater punishment than would have been permitted at the time of the entry of the order of probation. In Scott v. State, 326 So.2d 165 (Fla. 1976), the court held that a trial judge who previously sentenced a defendant to a term of years less than the maximum allowed by law could, after a new trial in which the defendant is placed on probation, impose for violation of the terms of probation any sentence up to the maximum which could have been originally imposed. 378 So.2d 335-36.
We follow the reasoning of the Second District Court of Appeal and the Fourth District Court of Appeal. We therefore hold that when a defendant pleads guilty pursuant to a plea bargain and the court places him on probation, if he violates his probation the court can sentence him to a term in excess of the provisions of the original bargain.
The decision of the district court of appeal is quashed and the cause is remanded with instructions to affirm the sentence imposed by the trial court.
It is so ordered.
SUNDBERG, C.J., and OVERTON and ALDERMAN, JJ., concur.
ENGLAND, J., dissents with an opinion, with which BOYD, J., concurs.
ENGLAND, Justice, dissenting.
I respectfully dissent. The result which the majority has adopted does not comport with fundamental fairness or evenhanded treatment between the state and criminal defendants. The Court's error, I believe, is based on an implicit misconception as to the role of resentencing in a probation revocation *1019 proceeding. The correct role, when analyzed against the three events which in fact occurred in this case, leads me to conclude that the Third District Court of Appeal was correct in limiting the maximum sentence following probation revocation to the five-year term stipulated in the plea agreement.[1]
The first step in this proceeding was preliminary to sentencing. The prosecuting attorney struck an agreement to obtain Segarra's guilty plea in exchange for a maximum possible sentence (i.e., a sentencing "cap") of five years imprisonment. The agreement was taken to the trial judge and approved. At that point, it became, for all intents and purposes, a binding executory contract.
The second step in the sequence was sentencing. At the sentencing proceeding, the judge elected to provide more leniency than the agreement had afforded, and he sentenced Segarra to probation. The contract thus became executed, or fulfilled. The court acted within the bounds of the agreement it had approved. Segarra received the benefit of the state's concession that he not be sentenced for more than five years. The state received the benefit of its bargain by being relieved of the necessity of proving at a trial that Segarra was guilty of the crime with which he was charged. Neither party could complain at that point, for both had received precisely what they had bargained for, and all terms of the agreement were satisfied.
The third step in this proceeding occurred when Segarra violated the terms of his probation, which precipitated his resentencing at a revocation proceeding. As will be explained, my disagreement with the majority stems from its characterization of that event.
The majority correctly notes that section 948.06(1), Florida Statutes (1977), enables the trial court, upon revocation of probation, to "impose any sentence which it might have originally imposed before placing the probationer on probation." Although this provision generally has been interpreted to mean that the court can impose any penalty within the maximum prescribed by statute,[2] the presence of a completed plea agreement compels an exception to this interpretation, at least in cases such as this one. The distinctive feature here was that the trial court accepted Segarra's guilty plea, in exchange for which the state relinquished the opportunity for incarceration beyond a five-year term. Once the plea agreement was approved, I would argue that five years became the maximum sentence which the court could "originally impose" under the statute.
As a consequence of his failure to abide by the terms of probation in the third phase of these events, Segarra should be placed in the same position he occupied prior to the end of the second phase, or sentencing-namely, at risk of being imprisoned for up to five years without the state having to prove his guilt. I cannot understand why the state should be relieved from proving Segarra's guilt without Segarra receiving the benefit of the five-year cap. The majority is, in effect, allowing the state, but not Segarra, to benefit from the agreement.
The majority's view, I believe, is predicated on an erroneous assumption that the imposition of a sentence upon revocation of probation  generally termed "resentencing"  is to be determined on the basis of the defendant's subsequent conduct which led to revocation. On the contrary, resentencing is exactly what the word connotes-a new sentence on the original offense rather than a new sentence for subsequent conduct.[3] The majority is led astray *1020 in all probability because the trial court, after reviewing the presentence investigation in phase two, gave Segarra a more lenient sentence than that for which the state had bargained. But the trial court necessarily placed Segarra on probation because it believed he could live at liberty without being a risk to society. While that prognostication did not come true, the assignment of probation, in all meaningful senses, fulfilled the terms of the plea agreement.
It follows that revocation of probation, and the substitute of jail time for what was originally leniency, simply puts the court and the parties back in the position they were in at the time of the original sentencing. The court, of course, has added knowledge regarding the defendant's rehabilitative potential, and it can utilize that knowledge in resentencing the defendant on the original offense. The original maximum sentence, however, whether set by statute or by an approved plea agreement, still limits the court's sentencing discretion.
The majority is apparently troubled by the possibility that, if a plea bargain were made for probation, a court would be unable to impose any prison sentence on revocation and there would be no incentive for the defendant to keep the terms of probation. The easy answer to that concern is that this problem can never arise in cases like this one, where the plea bargain entails a maximum sentence other than probation. In cases such as this one, moreover, any risk of under-sentencing at the second step is wholly within the control of the state, where the responsibility should and does, in fact, lie.
Prosecutors may adjust the terms of plea agreements to take probation into account as a sentencing alternative by including in their agreements an express understanding that a revocation of probation will enable the court to impose any sentence up to the statutory maximum. Alternatively, prosecutors can simply acknowledge in the bargain that probation is up to the court, placing on the trial judge the burden of warning the defendant (when the plea is accepted) that if probation is ordered, its subsequent revocation may result in the imposition of the maximum statutory sentence.[4] Following either of these alternatives will provide a fringe benefit to society, since the defendant will have more incentive to abide by the agreement's terms if he is aware of the more severe possible consequences on revocation of probation. Under either alternative, the trial judge could fairly sentence a defendant to the maximum statutory penalty upon revocation since, in truth, the defendant would be receiving what he had "bargained for." The problems envisioned by the majority thus would be avoided with very little effort.
In this case, the state by contract has relieved itself of the risk of failing to prove Segarra's guilt at trial. Basic notions of *1021 due process[5] now require that the same contract be enforced on Segarra's behalf.[6] I would affirm the decision of the Third District Court of Appeal and limit the trial judge on resentencing to the five-year maximum period (with credit for time served) to which the state and Segarra had agreed.
BOYD, J., concurs.
NOTES
[1] Segarra v. State, 360 So.2d 79, 80 (Fla.3d DCA 1978).
[2] See State v. Jones, 327 So.2d 18 (Fla. 1976); Scott v. State, 326 So.2d 165 (Fla.), cert. denied, 429 U.S. 836, 97 S.Ct. 104, 50 L.Ed.2d 103 (1976); Hutchinson v. State, 360 So.2d 1160 (Fla.1st DCA 1978).
[3] This principle is implicit within section 948.06(1), Florida Statutes (1977), which limits resentencing upon revocation of probation to any sentence which the trial court could originally impose. Accord, People v. Johnson, 40 Ill. App.3d 388, 391, 352 N.E.2d 462, 464 (1976) ("The sentence imposed when probation is revoked must be one which is appropriate for the offense for which the defendant was placed on probation, not one designed to punish for the subsequent criminal conduct which led to the revocation.").
[4] This alternative approach was upheld by the Fourth District Court of Appeal in Pugh v. State, 379 So.2d 398 (Fla.4th DCA 1980), wherein the court concluded that:

the trial court acted well within its authority under the circumstances presented here. [Defendant's] agreement specifically contemplated a term of probation. When probation is imposed, the potential consequences of a violation of probation are an implicit part of the arrangement. Here the [defendant] was specifically advised that the trial court had authority to sentence him to a total of five years imprisonment possibly in the form of a one year sentence forthwith, and another four years should he violate his probation. Hence, his later sentence of five years with credit for time served was not in violation of the agreement approved by the court.
Id. at 400 (emphasis added).
The court in Pugh correctly distinguished the instant case, noting that "probation was not contemplated by [Segarra's] plea negotiations and it does not appear that the defendant was specifically advised that upon revocation of his probation he could be sentenced to more than five years." Id. at 399. While Segarra was warned at the sentencing proceeding that his violation of the terms of probation would result in a "very stiff jail sentence," this warning was, at best, ambiguous. Nothing in the warning suggests that Segarra understood that revocation of probation would result in a sentence in excess of the agreed five-year cap.
[5] Art. I, § 9, Fla. Const.
[6] It would not be appropriate to allow Segarra to withdraw his plea and put the state to its proof, since Segarra already has served over three years of imprisonment.