420 So.2d 639 (1982)
Logan FINNEY, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-1936.
District Court of Appeal of Florida, Third District.
October 5, 1982.
*640 Bennett H. Brummer, Public Defender and Alan R. Dakan, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Steven R. Jacob, Asst. Atty. Gen., for appellee.
Before HUBBART, C.J., and BARKDULL, HENDRY, SCHWARTZ, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.

ON MOTION FOR REHEARING EN BANC
NESBITT, Judge.
On its own motion, this court granted a rehearing en banc to review the original *641 majority opinion due to a conflict in Furr v. State, 420 So.2d 341 (Fla. 3d DCA 1982) (Case no. 80-2203, opinion filed October 5, 1982.)
Because motions for rehearing en banc constitute an extraordinary procedural device to harmonize conflicts within a given district court of appeal, we first examine whether sufficient conflict exists to properly authorize a rehearing en banc.
Florida Rule of Appellate Procedure 9.331(c)(1) provides:
A rehearing en banc may be ordered by a district court of appeal on its own motion or on motion of a party. Within the time prescribed by Rule 9.330 and in conjunction with the motion for rehearing, a party may move for an en banc rehearing solely on the ground that such consideration is necessary to maintain uniformity in the court's decisions. A motion based on any other ground shall be stricken. A vote will not be taken on the motion unless requested by a judge on the panel that heard the proceeding, or by any judge in regular active service on the court. Judges who did not sit on the panel are under no obligation to consider the motion unless a vote is requested.
No decisional law concerning employment of the device has developed but the committee notes to the rule are instructive. The notes in part provide:
This rule is patterned after the en banc rule of the United States Court of Appeals for the Fifth Circuit and should be used sparingly.
... Counsel are reminded that en banc proceedings are extraordinary and will be ordered only in the enumerated circumstances. The ground, maintenance of uniformity in the court's decisions, is the equivalent of decisional conflict as developed by Supreme Court precedent in the exercise of its conflict certiorari jurisdiction. The district courts are free, however, to develop their own concept of decisional uniformity.
Utilizing these criteria, we are attracted to the Supreme Court decision in Nielsen v. City of Sarasota, 117 So.2d 731 (Fla. 1960) where Justice Thornal articulated the basis for the Supreme Court's conflict jurisdiction:
While conceivably there may be other circumstances, the principal situations justifying the invocation of our jurisdiction to review decisions of Courts of Appeal because of alleged conflicts are, (1) the announcement of a rule of law which conflicts with a rule previously announced by this Court, or (2) the application of a rule of law to produce a different result in a case which involves substantially the same controlling facts as a prior case disposed of by this Court. Under the first situation the facts are immaterial. It is the announcement of a conflicting rule of law that conveys jurisdiction to us to review the decision of the Court of Appeal. Under the second situation the controlling facts become vital and our jurisdiction may be asserted only where the Court of Appeal has applied a recognized rule of law to reach a conflicting conclusion in a case involving substantially the same controlling facts as were involved in allegedly conflicting prior decisions of this Court. Florida Power & Light Co. v. Bell, Fla. 1959, 113 So.2d 697.
117 So.2d at 734.[1]
We conclude that the test which has been articulated for Supreme Court conflict jurisdiction clearly describes the type of conflict this court requires in order to rehear a case en banc. A Nielsen type conflict properly activates our authority, rather than the desire of an attorney to have the entire court rehear a case which has been decided contrary to his client's interests.
*642 Employing the test announced in Nielsen, supra, we have determined that this case involves substantially the same controlling facts as the prior case of Furr, supra. In both cases, the defendant pled nolo contendere, reserving the right to appeal the denial of his motion to suppress. The state in each instance stipulated that the motion to suppress would be dispositive. On these facts, our original decision in Finney held that despite the stipulation the issue was not dispositive and remanded for further proceedings to afford the defendant an opportunity to withdraw his plea; while in Furr, supra, the stipulation was relied upon to determine that the issue was dispositive. Because the original decision in this appeal reached a different result than that in Furr v. State, supra, on essentially the same controlling facts, we are satisfied that a Nielsen type conflict exists. Consequently, we reach the merits of the present appeal.
In Jackson v. State, 382 So.2d 749 (Fla. 1st DCA 1980), aff'd, 392 So.2d 1324 (Fla. 1981), the court concluded that a stipulation by the parties that a case could not be prosecuted without the benefit of a confession, enabled the motion to suppress to be dispositive of the case. Accord, Alexander v. State, 399 So.2d 110 (Fla. 1st DCA 1981); Snell v. State, 388 So.2d 1353, 1354, n. 2 (Fla. 5th DCA 1980); Oesterle v. State, 382 So.2d 1293 (Fla. 2d DCA 1980). This court, in Sune v. State, 402 So.2d 11 (Fla. 3d DCA 1981), recognized that if there had been evidence of a stipulation between counsel, it would be appropriate to reach the merits. This decision is not contrary to Brown v. State, 376 So.2d 382 (Fla. 1979) where the court expressed concern that any attempt to demonstrate that a confession was dispositive, would result in a mini-trial being conducted. Where a stipulation has been entered into by both sides, the court will not be called upon to hear testimony as to the dispositive nature of the evidence. A stipulation is the parties' recognition that, for whatever reason, they have presented all of the evidence that they care to and each is willing to abide the appellate consequences regarding the grant or denial of the motion to suppress. Because this case falls squarely in line with Jackson, supra, we must conclude that by virtue of the stipulation, the present motion to suppress is dispositive of the issue on appeal.
On the merits of the motion to suppress, we find that the motion was properly denied by the court below. The ruling of a trial court on a motion to suppress arrives in the appellate court clothed with the presumption of correctness and all reasonable inferences and deductions to be derived from the evidence will be construed in the light most favorable to sustain the trial court ruling. McNamara v. State, 357 So.2d 410, 412 (Fla. 1978); Barrios v. State, 397 So.2d 440 (Fla. 3d DCA 1981).
Viewing the evidence in this light, it appears that a robbery occurred at approximately 2:15 a.m. on July 5, 1979. The victim had been assaulted, but was nonetheless able to provide the investigating officers with the description of a Buick automobile with a black vinyl top and yellow body and no license plate. Based on that information, a BOLO was released and a vehicle matching the description was stopped approximately forty blocks from the robbery scene within an hour of the incident. Fifteen minutes later, Detective Ross arrived at the scene, advised the defendant of his Miranda rights, and was given verbal permission to search the defendant's vehicle. This led to the disclosure of a watch which matched the description of the victim's stolen property. The policeman received permission and immediately took the watch to the hospital for the victim's identification. Upon receiving confirmation that it was the victim's watch, the officer returned to the station house where the defendant was in custody. After obtaining a photograph of the defendant, Detective Ross compiled a photographic lineup and returned to the hospital with it. The victim positively identified the defendant as the driver of the getaway car used in the robbery. At that point, the defendant was placed under arrest. In all, the arrest occurred approximately ninety minutes from the time when *643 the defendant was stopped. The defendant sought to suppress the introduction of the watch and the victim's identification of it, the photographic lineup identification, and all evidence obtained therefrom including in-court identification of the defendant.
The police officers' stop of the defendant's vehicle was proper because it was supported by an articulable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Dunlap, 392 So.2d 1366 (Fla. 3d DCA 1981). The BOLO was issued on the basis of information received directly from the victim. The vehicle described and stopped was a distinct and unusual one. It was seen at a time and place consistent with the criminal activity. See, State v. Delgado, 402 So.2d 41 (Fla. 3d DCA 1981). Consequently, there was no taint from an unconstitutional stop.
Given the right to stop the vehicle, under the circumstances, the officers were justified in detaining the defendant for approximately ninety minutes. It is permissible for officers to detain a suspect for a reasonable time while making an investigation prior to arrest. State v. Lopez, 369 So.2d 623 (Fla. 2d DCA 1979); State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978). In State v. Merklein, 388 So.2d 218, 219 (Fla. 2d DCA 1980), the court stated that: "[t]he reasonableness of an investigatory detention depends on the circumstances surrounding the detention, and not solely on its length. See Lopez, 369 So.2d at 625." The court found that a thirty to forty minute detention pending arrival of another officer, robbery victim, and witnesses was not unreasonable. In this case, the defendant was only detained for fifteen minutes before the officer who had interviewed the victim arrived. At that point, the officer could not obtain a positive identification of the defendant without twice traveling to the victim's hospital room. He also had to take a picture of the defendant in order to compile a photographic lineup. Had the victim been well enough to travel to where the defendant was being held, the identification would have been made sooner. However, under the circumstances, the officer completed his investigation within a reasonable time. Consequently, we find that the length of time which the defendant was detained was reasonable under the circumstances and not violative of the defendant's rights.
The warrantless search which was conducted subsequent to the legal stop was valid because of the defendant's consent. Where there was no taint from an unconstitutional stop, the state was only required to show by a preponderance of the evidence that the warrantless search was procured through the defendant's consent. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Schlanger v. State, 397 So.2d 1028 (Fla. 3d DCA 1981). There is no requirement that the defendant have knowledge of his right to refuse consent to the search. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
Since we hold that the search did not violate the defendant's constitutional rights, the evidence obtained as a result of that search is admissible.
For the foregoing reasons, we find the rehearing en banc to be proper. Our former opinion is vacated and withdrawn and the order denying the defendant's motion to suppress is affirmed.
HUBBART, C.J., and BARKDULL, HENDRY and FERGUSON, JJ., concur.
DANIEL S. PEARSON, Judge, concurring specially.
I concur. Today's decision should put an end to the unseemly spectacle of the State, having agreed through its representative at the trial level (the State Attorney) that a matter is dispositive, later arguing, through its representative in the appellate court (the Attorney General) that the matter is not dispositive and that we are without jurisdiction to hear the defendant's appeal. This difference in position was never, in my view, attributable to an act of bad faith by the State. Instead, the difference in position is accounted for by the difference between *644 Jackson v. State, supra, and Brown v. State, supra. Thus, when the State Attorney said "dispositive," he was talking Jackson  that is, committing the State not to prosecute further in the event the defendant prevailed on appeal; when the Attorney General said "not dispositive," he was talking Brown  that is, contending that even if the defendant prevailed on appeal, it was still legally possible for the State to continue with the prosecution. But what the Attorney General ignored is that where there is an agreement on dispositiveness, Brown's "legal dispositiveness" is, by definition in Jackson, irrelevant.[2]
Jackson is a welcome retreat from Brown. The concern in Brown that the expeditious resolution of the controversy would be thwarted by permitting a defendant to appeal legally nondispositive pre-plea rulings is obviated where the parties agree that the appellate court's decision will end the case one way or another. When they so agree, the defendant does not face the prospect of a trial if he prevails on appeal; the appellate decision concludes the matter,[3] and the precious resources of the courts are saved by not forcing the defendant to go through a trial for the singular purpose of preserving an issue for review.[4]
I come now to my only disagreement with the majority. Since we are treating agreements as to dispositiveness as binding on the parties, I think it absolutely essential that there be a clear understanding what the agreement is. The majority opinion, without any discussion of the agreement, implicitly assumes that the State agreed that if the appellate court were to decide that any one item of evidence or body of testimony which the defendant sought to have suppressed should have been suppressed, the State would not further prosecute. Because  but only because  the majority holds that the trial court was right in *645 every respect and no suppression at all was required, the importance of the agreement, and the majority's unwarranted assumption about it, is unrevealed.
The agreement to which the State acceded was set forth in defense counsel's announcement:
"I believe [the] State and I can agree on a stipulation that the motion would be dispositive of the case."
But Finney's motion, not atypically, sought the suppression of more than one thing. Finney sought to suppress the stolen watch on the ground that the stop of his vehicle was unlawful and that his consent to search the vehicle, leading to the discovery of the watch, was tainted by the stop, see, e.g., Norman v. State, 379 So.2d 643 (Fla. 1980); State v. Frost, 374 So.2d 593 (Fla. 3d DCA 1979); he sought to suppress evidence of the out-of-court photographic identification on the ground that the photograph of him was the product of his unlawful detention, see, e.g., Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); and he sought to suppress the victim's in-court identification of him on the ground that it was tainted by the out-of-court photographic lineup, see, e.g., Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Baxter v. State, 355 So.2d 1234 (Fla. 3d DCA 1978). Consequently, the trial court's denial of the "motion" was an amalgam of separate rulings as to separate items of evidence and testimony. Therefore, when the parties agreed that "the motion would be dispositive of the case," it is far from clear that the State was agreeing that it would forego further prosecution of the defendant if we reversed the trial court as to one of its rulings pertaining to one item of evidence or testimony, and, on the other hand, far from clear that the defendant was entering a nolo contendere plea with the understanding that we would have to reverse all of the trial court's rulings pertaining to all of the items of evidence in order for him to be entitled to discharge from further prosecution.
The problem presented by the ambiguous agreement is, of course, avoided by an affirmance, as has occurred in the present case, of each and every ruling of the trial court on each and every suppression claim. It is quite conceivable, however, that we could have upheld the vehicle search and denied suppression of the stolen watch, and yet condemned the ensuing and extended detention of the defendant leading to the photographic identification. Yet even if we declared that the State could not elicit testimony concerning the out-of-court identification, we could have consistently held that the victim was free to identify the defendant in court. See, e.g., United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); Harris v. State, 400 So.2d 462 (Fla. 5th DCA 1981). These potential differences in result, which exist in every case where the defendant and the State agree that a motion or motions seeking to exclude more than one item of evidence or body of testimony obtained through unrelated alleged unlawfulness, will compel us, sooner or later  and I think sooner, to address the problem of the ambiguous agreement.
Therefore, I think this case should serve the additional purpose of placing the State on notice that when it stipulates that something is dispositive, and binds itself to forego any further prosecution of the defendant in the event the defendant prevails on appeal, its stipulation must clearly inform us what is meant  that is, upon what motion or motions or what parts of a motion must the defendant prevail before the State will abandon its prosecution. The promise of the State to the defendant will then be clear, and we will be called upon to review only that which will in fact bring an end to the case one way or another. Unless the agreement is clear and it is certain which ruling or rulings will finally conclude the case, a decision by us in the defendant's favor on any motion and against him on some other furnishes us with no basis for either discharging him or affirming the judgment against him. Such a decision *646 cannot, therefore, be dispositive of the case. And since we have not yet accorded criminal defendants the right to an interlocutory appeal, it follows that we have no jurisdiction to review multiple rulings of a trial court where it is unclear which of those rulings, if not all of them, are dispositive of the case. Accordingly, it is my view that when in the future we are confronted with an ambiguous stipulation, we should immediately relinquish jurisdiction to the trial court for the purpose of having the agreement clarified, and if no clear agreement can be reached, permitting the defendant to withdraw his nolo contendere plea or reaffirming that plea without any agreement.
SCHWARTZ, NESBITT, FERGUSON and JORGENSON, JJ., concur.
SCHWARTZ, Judge (specially concurring).
I concur with Judge Nesbitt's opinion on the merits, as well as with Judge Pearson's specially concurring views.
Under the circumstances of this case, in which en banc treatment is obviously justified on any standard, I see no reason for the discussion of the en banc rule, and specifically do not concur in that portion of Judge Nesbitt's opinion.
DANIEL S. PEARSON and JORGENSON, JJ., concur.
BASKIN, Judge (dissenting).
I disagree with the majority for several reasons. First, conflict with Furr v. State, 420 So.2d 341 (Fla. 3d DCA 1982), the stated reason for withdrawal of the original Finney opinion, is absent. Furr is a per curiam affirmance with citations and contains no statement of an issue which might serve as a predicate for conflict. Furthermore, at the time the original Finney opinion was released on July 7, 1981, no conflict existed. Furr, argued after Finney and first scheduled for release simultaneously with this opinion, is in no sense prior to the original Finney opinion as Judge Nesbitt indicates. This use of the rehearing en banc rule provides litigants two appeals, one before a panel of three judges and one before the entire court. In following this procedure, the majority ignores the purpose of the en banc rule.
Second, Finney and Furr present dissimilar issues which neither conflict nor lack the uniformity described in Florida Rule of Appellate Procedure 9.331(c), governing rehearing en banc. In Finney, the state repudiated its stipulation that it could not proceed to trial in the event of a reversal and announced that it could proceed with eyewitness testimony. In Furr, the stipulation and plea produced two appealed issues subject to different rulings. Neither issue was dispositive because the state indicated it could proceed if either ruling were reversed. Although both Finney and Furr involved stipulations, the disparity of the questions involved takes these cases outside the rule concerning rehearing en banc.
Next, I believe both Jackson v. State, 382 So.2d 749 (Fla. 1st DCA 1980), aff'd, 392 So.2d 1324 (Fla. 1981) and Brown v. State, 376 So.2d 382 (Fla. 1979) remain valid and require that issues reserved in Ashby nolo pleas be dispositive before we accept review. While the conservation of court resources is commendable, it should not be the sole consideration. Today's decision prevents the state from prosecuting its case solely because the trial prosecutor mistakenly stipulated that the state would be unable to prosecute if certain evidence were suppressed. Recognizing the error, the state has now informed us that it could proceed to trial or plea by utilizing other evidence if we were to reverse the trial court's ruling and suppress the challenged evidence. Because the issues appealed are not dispositive, and therefore are not reviewable under supreme court standards, I believe the state should be permitted to confess its error in entering the stipulation and the defendant permitted to withdraw his plea.[1] The state may then prosecute the *647 case according to law, by trial or plea. In my view, Brown v. State, supra, and Jackson v. State, supra, control and mandate withdrawal of the plea which was accepted on the faulty premise that the reserved issue would qualify for appellate consideration.
The Supreme Court of Florida has defined prerequisites to appellate review of issues reserved upon the entry of a nolo contendere plea in accordance with State v. Ashby, 245 So.2d 225 (Fla. 1971). In Brown v. State, supra, the court decided that review of an Ashby conditional nolo contendere plea is proper when the appealed issue is dispositive of the case. Describing what constitutes a dispositive legal issue which would expedite resolution of a controversy by narrowing the issues to be resolved, the court listed three categories of rulings as illustrative: motions testing the sufficiency of the charging document; the constitutionality of a controlling statute; or the suppression of contraband for which a defendant is charged with possession. Seeking to avoid a minitrial on the question of sufficiency of the evidence when a case involved a confession, the court ruled that a confession could not be considered dispositive for Ashby nolo plea purposes. Furthermore, a trial court ruling on dispositiveness could be overturned upon a showing of "clear abuse of discretion."
Later, in Jackson v. State, supra, the court added a fourth situation which might render the issue dispositive, that is, when both parties stipulate that a confession is dispositive of the case. Jackson did not, as one concurring opinion suggests, retreat from Brown; it added another circumstance to Brown's list of dispositive situations. None of those circumstances exists in Finney.
In Finney, a trial prosecutor (assistant state attorney) mistakenly stipulated that our decision would be dispositive of the case, but an appellate prosecutor (assistant attorney general) discovered the error and brought it to our attention. He advised us that the matter appealed is not dispositive because, if we reverse the trial court's ruling and exclude the evidence challenged, the state will still be able to proceed with eyewitness identification. Thus, we no longer have before us a situation in which both sides agree the matter is dispositive, the Jackson prerequisite for our review, and we must decline review under Brown.
In my opinion, Brown and Jackson do not open the door for appellate consideration upon mere stipulation that the question is ripe for appellate review. Brown precludes us from considering non-dispositive issues, and a stipulation entered by mistake does not change an issue from non-dispositive to dispositive.
In any event, I do not agree that an appellate court must continue the fiction by accepting the issues as dispositive when the appellate court, unlike the trial court, is informed that the issues are not dispositive. In Jackson, the stipulation reflected the truth, that the matter was dispositive; here it does not. No longer do we contemplate a situation in which both parties agree that the state is unable to proceed as required by Jackson. The reality of this situation compels us to recognize that the issue is not dispositive and to permit defendant Finney to withdraw his plea if he wishes to do so.
*648 Ample authority exists for allowing a plea to be withdrawn; Brown v. State, supra, authorized the withdrawal of an Ashby plea entered before the date of its decision. Accord, Kjersgaard v. State, 383 So.2d 763 (Fla. 2d DCA 1980); Pittman v. State, 382 So.2d 1227 (Fla. 2d DCA 1980); Gray v. State, 381 So.2d 302 (Fla. 2d DCA 1980); Arnold v. State, 379 So.2d 1003 (Fla. 2d DCA 1980). A defendant's understanding that he could appeal, incorrect because of clerical error, was sufficient to provide him the opportunity to withdraw his plea. Thatcher v. State, 385 So.2d 163 (Fla. 5th DCA 1980). A defendant who may have been misled by an appellate opinion was permitted "in the interest of justice" to withdraw his nolo contendere plea. Wright v. State, 376 So.2d 236 (Fla. 1st DCA 1979), cert. denied, 389 So.2d 1117 (Fla. 1980). Court rejection of a plea agreement leads to withdrawal of the plea. Davis v. State, 308 So.2d 27 (Fla. 1975); Freeman v. State, 376 So.2d 294 (Fla. 2d DCA 1979); Richmond v. State, 375 So.2d 1132 (Fla. 1st DCA 1979); Segarra v. State, 360 So.2d 79 (Fla. 3d DCA 1978) rev'd on other grounds, 388 So.2d 1017 (Fla. 1980); State ex rel. Wilhoit v. Wells, 356 So.2d 817 (Fla. 1st DCA), cert. denied, 359 So.2d 1222 (Fla. 1978); Slay v. State, 347 So.2d 730 (Fla. 1st DCA 1977); Reynolds v. State, 339 So.2d 714 (Fla. 2d DCA 1976); Fla.R.Crim.P. 3.172(g).
Florida Rule of Appellate Procedure 9.140(f) states: "In the interest of justice, the court may grant any relief to which any party is entitled."
In summary, I would hold that Brown permits us to review only dispositive issues; that Jackson authorizes review when both sides correctly stipulate that an issue is dispositive; however, when one side repudiates its stipulation and the appellate court is aware that the parties do not agree, the issues are no longer dispositive. Under these circumstances, withdrawal of the plea should be permitted at the election of the defendant. If, however, on appeal, the state misrepresents that a dispositive stipulation is non-dispositive, this court should not hesitate to impose sanctions for that misrepresentation.[2]
NOTES
[1] Although not at issue in this case, we note that the first basis of conflict jurisdiction announced in Nielsen was explained in Kyle v. Kyle, 139 So.2d 885 (Fla. 1962). Where a decision of the court is so disharmonious with a prior decision by the court on the same point and generates confusion and instability to the point that the latter may be said to have overruled the former, sufficient conflict exists to reconcile the conflict. We would adhere to that elaboration of Nielsen.
[2] The only remaining sphere of influence for Brown is in the case where there is no agreement by the State. The impact of this is that if the State enters into this "conditional nolle prosequi" agreement, neither the trial court nor we can employ Brown to defeat the agreement any more than the trial court or we are empowered to interfere with the State's right to enter a nolle prosequi to any prosecution. See Wilson v. Renfroe, 91 So.2d 857 (Fla. 1956); State v. Sokol, 208 So.2d 156 (Fla. 3d DCA 1968).
[3] Thus, were we to decide such an appeal in favor of the defendant, we would reverse the judgment of conviction and, based on the State's agreement, order the defendant discharged.
[4] The proposed amendment to Federal Rule of Criminal Procedure 11 goes even further. It would allow a defendant, with the consent of the Government and court, to enter a conditional plea reserving the right to appeal from the adverse determination of any specified pretrial motion and, if successful, be afforded the opportunity to withdraw his plea. The Advisory Committee Note to Rule 11 recognizes:

"... While it is true that the conditional plea does not have the complete finality of the traditional plea of guilty or nolo contendere because `the essence of the agreement is that the legal guilt of the defendant exists only if the prosecution's case' survives on appeal, the plea
"`continues to serve a partial state interest in finality, however, by establishing admission of the defendant's factual guilt. The defendant stands guilty and the proceedings come to an end if the reserved issue is ultimately decided in the government's favor.'"
By comparison, under the holding of the present case, the proceedings come to an end when the issue is ultimately decided, whether in the State's or the defendant's favor. Sanctioning agreements as to dispositiveness does away with the time-consuming process which occurs when an appellate court questions whether an issue is legally dispositive, relinquishes jurisdiction to the trial court for a hearing on that issue, finds the issue not dispositive, dismisses the appeal, and permits the defendant to withdraw his plea. See, e.g., Gray v. State, 381 So.2d 302 (Fla. 2d DCA 1980). Moreover, encouraging and accepting agreements between the State and the defendant will have the salutary effect of avoiding potential collateral attacks on nolo contendere pleas entered in the erroneous belief, gained from counsel or the trial judge, that a preserved issue is legally dispositive and an appeal is viable. See Hardison v. State, 385 So.2d 738 (Fla. 2d DCA 1980) (dismissing appeal without affording appellant right to withdraw his plea entered after Brown); Campbell v. State, 386 So.2d 629 (Fla. 5th DCA 1980) (affirming without addressing nondispositive suppression issue); Webb v. State, 373 So.2d 400 (Fla. 1st DCA 1979) (affirming without addressing one of two suppression issues on ground not legally dispositive where plea entered pre-Brown).
[1] The ABA Standards, The Prosecution Function and The Defense Function 4.3(c) (Approved Draft, 1971) Comment b, provides:

b. Honoring plea agreements
The refusal to honor an agreement concerning a recommendation to the court after a guilty plea is made undermines the voluntariness of that plea. See Shelton v. United States, 242 F.2d 101, 113 (5th Cir.1957). Accordingly, it has been recommended in an earlier Report that the defendant be entitled as of right to withdraw his guilty plea if the court finds the prosecutor has breached the plea agreement ABA STANDARDS, PLEAS OF GUILTY § 2.1 (Approved Draft, 1968). The prosecutor may find himself unable to fulfill an agreement previously made, either because the agreement exceeded the power of the prosecutor who made it or because new facts show that it was inappropriate. See People v. Pagano, 283 App.Div. 1075, 131 N.Y.S.2d 167 (1954). When these circumstances arise and the prosecutor is not able to fulfill the agreement, he must take steps to see that his action does not prejudice the defendant. He should notify the defendant promptly and cooperate in seeking a withdrawal of a guilty plea and restoring the defendant to his position prior to the making of any plea. (emphasis added).
[2] The ABA Standards, The Prosecution Function and The Defense Function 4.3(c) (Approved Draft, 1971), defines the function of the prosecutor:

4.3. Fulfillment of plea discussions
... .
(c) If the prosecutor finds he is unable to fulfill an understanding previously agreed upon in plea discussions, he should give notice promptly to the defendant and cooperate in securing leave of the court for the defendant to withdraw any plea and take other steps appropriate to restore the defendant to the position he was in before the understanding was reached or plea made.
The Commentary explains:
a. Misrepresentation of Power or Intention
A plea entered as the result of a prosecutor's promising concessions beyond his power to fulfill is involuntary and the defendant is entitled to withdraw it. Machibroda v. United States, 368 U.S. 487 [82 S.Ct. 510, 7 L.Ed.2d 473] (1962). More often it is not so much a matter of intentional deception by the prosecutor as that he has failed to make clear that he is without power to effect a particular disposition by the court. See State v. Hovis, 353 Mo. 602, 183 S.W.2d 147 (1944). It is therefore important that the prosecutor make clear to the defense that he is not able to assure the judicial consequence of a guilty plea.
Florida Rule of Criminal Procedure 3.171, relating to plea discussions and agreements, "finds its genesis" in the ABA Standards, Pleas of Guilty (1968). Davis v. State, supra at 29.