## STATE OF FLORIDA v. FELCOFF

Case No. 85-5331 CF

Seventeenth Judicial Circuit, Broward County

August 12, 1985

### APPEARANCES OF COUNSEL

**Steve Rowe,** Assistant State Attorney, for plaintiff.
**Susan Powell Sistone** for defendant.

### OPINION OF THE COURT

J. LEONARD FLEET, Circuit Judge.

#### Introduction

The factual analysis upon which this order is predicated is taken from the defendant's motion to suppress and the probable cause affidavit as filed at the time of the arrest of the accused herein.

## Statements of Facts

Defendant, a resident of Minnesota, arrived, via Greyhound bus, at the Pompano Beach terminal late at night on May 5, 1985. Unable to reach his parents on the telephone, the Defendant commenced walking to a motel located several blocks from the bus terminal. Clad in a snow cap, jacket, slacks and boots and carrying a tool box in one hand and a suitcase in the other, the defendant caught the eye of the arresting officer as the accused crossed South Federal Highway at about the 500 block thereof. The area in which the accused was observed by the officer was known to have been plagued by burglars on a fairly frequent basis.

The accused was encountered by the arresting officer, who sought to learn from where the accused was coming and the nature of his business in the area. There is nothing in either the Motion to Suppress or the probable cause affidavit to suggest that the accused was in any fashion denied freedom of movement by the officer or that the accused was intimidated by the presence of the party seeking the information herein described.

When asked by the officer to produce some sort of identification, the accused said, "I'll tell you because you are going to find out anyway: I've got a gun." When asked where the gun was located, the accused started to reach for his right front jacket pocket; when the officer repeated his query as to the location of the firearm, the accused continued the movement of his hand towards the jacket wherein the firearm was located. The officer grabbed the hand of the accused and forced the accused to lean against the police patrol unit. Once the accused had assumed the classic "position", the arresting officer felt the right front pocket of the jacket of the accused and discerned the outline of a handgun, after which he reached into the jacket pocket and removed therefrom a .38 revolver loaded with five live rounds of ammunition.

The discovery of the loaded weapon led to the search of the defendant's tool box where more ammunition was found as well as a "strip loader" and a clip-on holster. Examination of the luggage of the accused led to the discovery of another "strip loader" and more live ammunition.

## Analysis of Law

The accused herein seems to place great reliance upon the concept of "stop and frisk" as that principle of law was enunciated in *Terry v.*

*Ohio*, 88 S.Ct. 1868 (1968) and codified into Florida law by F.S. 901.151; such reliance by the accused is not well placed.

It is not every encounter between a law enforcement officer and a citizen that rises to a level of restraint that triggers the protections of the Fourth Amendment of the United States Constitution or Section 12, Article I, of the Declaration of Rights of the Florida Constitution. *State v. Waldron*, 10 FLW 626 (Fla. 5th DCA 3/7/85) presented a situation wherein a person unfamiliar to a law enforcement officer, in an area where a prowler had been reported, was queried by the police officer as to the nature of the contents of the citizen's duffle bag. The citizen promptly opened the duffle bag, as a result of which the officer observed a firearm which was then seized. The search was deemed to be lawful and the firearm was not suppressed from evidence. This court fails to see any significant difference between the case at bar and the factual pattern set out in *Waldron supra*.

One concept that emanates from *Terry v. Ohio, supra,* however, does apply to the case now under review: the scope of the search about which complaint is made must be strictly tied to, and justified by, the initiating circumstances. Here we are presented with a situation in which no sooner does the officer meet the accused than the accused acknowledges the fact that he is in possession of a concealed firearm. Had the officer not taken the action that he did in this case, i.e., feel the outer surface of defendant's jacket, he would have, in the opinion of this court, been derelict in his duty to himself and to his fellow officer who was present as a back up. It is, therefore, the opinion of the court that the body search as conducted in this case was strictly tied to, and justified by, the initiating circumstances. The information furnished the arresting officer by the accused, without request therefor having been made by the officer, certainly supplied a constitutionally adequate and reasonable justification for the officer to place his hands upon the hand of the accused as well as the jacket of the accused. *Sibron v. New York*, 20 L.Ed.2d 917 (19 ).

Lest there be any confusion upon the point, the court is quite satisfied that the searches of the tool box and luggage in the actual possession of the accused were properly conducted without a warrant. The accused argues that the officers should have obtained a warrant for the search of the containers and that their failure to do so renders the search unlawful. This aspect of defendant's argument must fall because it presupposes the illegality of the prior restraint of the accused; to the contrary, the court now finds that such arrest was valid and the subsequent searches of the containers were incident to such arrest. It is well settled that a search incident to a lawful arrest is an exception to

152

the warrant requirement of the constitutions of the United States and the State of Florida. *Chimel v. California*, 23 L.Ed.2d 685 (1969); *U.S. v. Chadwick*, 433 U.S. 1 (1977); Article I, Section 12, Florida Constitution.

Finally, but not without importance equal to any other issue raised in the Motion to Suppress as submitted by the accused, the Court finds that the law does not require that the accused be fully advised of any right to refuse the search of his person or the containers in his actual possession, provided that the primary stop is valid. *Finney v. State*, 420 So.2d 639 (Fla. 3rd DCA 1982). Where there is no taint arising from an unconstitutional stop, there is no need for the state to establish by a preponderance of the evidence that any subsequent search was pursuant to consent lawfully obtained *Finney, supra.*

It is also to be noted, in order for there to be a complete understanding of the reasoning of the court herein, that *State v. Emery*, 411 So.2d 34 (Fla. 4th DCA 1982) teaches that (1) assuming that probable cause to arrest existed without reference to the fruits discovered as a result of the search, and (2) assuming that the arrest followed closely upon the heels of the challenged search, the search may be deemed valid. In the matter under review, once the accused stated that he was in possession of a concealed firearm there was more than enough probable cause for his arrest under Florida law. The search of the containers which resulted in the discovery of the balance of the physical evidence now sought to be suppressed preceded the formality of arrest by the briefest of times possible under the circumstances as they existed, thus clearly falling within the ambit of *Emery, supra.*

## Conclusion

The search of the jacket worn by the accused, and of the containers in his actual possession at the time of his arrest, were valid within the teachings of existing Florida and federal law.

Upon consideration of the foregoing, the Motion to Suppress filed by the accused is hereby DENIED.