James Charles **FANKBONER**,
Petitioner,

v.

Honorable Joshua L. **ROBINSON**, Judge
of the Circuit Court, Rockingham
County, et al., Respondents.

Civ. A. No. 74–C–78–H.

United States District Court,
W. D. Virginia,
Harrisonburg Division.

March 28, 1975.

Murray J. Janus, Scott H. Swan, Bremner, Byrne & Baber, Richmond, Va., for petitioner.

Wilburn C. Dibling, Jr., Asst. Atty. Gen., Richmond, Va., for respondents.

## OPINION

TURK, Chief Judge.

Petitioner, James Charles Fankboner, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 attacking his state court conviction for possession of a sawed-off shotgun for offensive or aggressive purposes. Va.Code, as amended, § 18.1–268.3. On December 14, 1973, he was tried and convicted of that offense by the Circuit Court of Rockingham County, sitting without a jury, and sentenced to a term of ten years[1] in the Virginia State Penitentiary, eight years of which were suspended. Petitioner appealed to the Virginia Supreme Court, which by order dated August 15, 1974, denied his writ of error and affirmed his conviction. Petitioner has exhausted his state court remedies as required by 28 U.S.C. § 2254(b). Ju-

---

1. Va.Code § 18.1–268.3 prescribes a mandatory minimum sentence of ten years.

risdiction vests in this court pursuant to 28 U.S.C. § 2241.

In this proceeding, petitioner's sole ground for relief is that the shotgun which was the basis of his conviction was seized in violation of the Fourth and Fourteenth Amendments to the United States Constitution. On January 10, 1975, this court conducted an evidentiary hearing. Based on this court's findings of fact which appear below, this court grants *habeas* relief.

## I

The record indicates the following:

On September 23, 1973, two uniformed police officers for the City of Harrisonburg went to petitioner's apartment in Harrisonburg, Virginia. Officer Green, the arresting officer, testified that he had two reasons for going to petitioner's apartment: First, petitioner's neighbors had complained of excessive noise in petitioner's apartment; and secondly, Officer Green had been informed by a man named Ritchie that petitioner had in his possession a sawed-off shotgun. When they arrived at the apartment, Officer Green knocked on the door. Petitioner, awakened by the knocks, asked "who is it?" Officer Green responded, "Green, police officer" (Tr. 12), whereupon petitioner opened the door. With the door open and petitioner standing in the doorway, Officer Green said, "Sorry to disturb you, I'd like to talk to you for a few minutes." (Tr. 12). Petitioner's only response was "sure." (Tr. 12). At this point, Officer Green entered the apartment without invitation by the petitioner. Once inside, Officer Green saw the sawed-off shotgun atop a refrigerator and placed petitioner under arrest.

It is apparently conceded that once inside petitioner's apartment, the shotgun was plainly visible to Officer Green. The only question is whether Green's presence inside the apartment was lawful. Respondents justify Green's presence in petitioner's apartment on the basis of petitioner's alleged consent to Green's entry. Since Green was legiti-

mately in the place from which he observed the shotgun, they argue, the seizure of the gun fell within the "plain view" exception to the warrant requirement. Petitioner, on the other hand, argues that he never consented to Officer Green's entry and that because Green was unlawfully inside the apartment, his seizure of the shotgun was not within the plain view doctrine and therefore unlawful under the Fourth and Fourteenth Amendments.

## II

■ The scope and purpose of the plain view doctrine as an exception to the warrant requirement were detailed in the plurality opinion, *per* Mr. Justice Stewart, in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Since any object will be in "plain view" immediately before its seizure, the fundamental question before the court was when the unobstructed view of evidence has legal significance justifying its seizure rather than being simply the normal condition attendant to any search, legal or illegal. *Coolidge, supra* at 465, 91 S.Ct. 2022. The court concluded that before the plain view doctrine may be successfully invoked, two pre-conditions must be satisfied: (1) the officer's vantage point must be lawful; (2) the discovery of the evidence must be inadvertent. *Id.* at 468–69, 91 S.Ct. 2022; *see also,* United States v. Bradshaw, 490 F.2d 1097 (4th Cir. 1974). This court finds that neither of these conditions were satisfied in this case.

## III

■ The privacy of the home has been one of the principal concerns of the Fourth Amendment. *See, e. g.,* Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). That petitioner had a protectible Fourth Amendment interest in excluding Officer Green from his apartment is beyond doubt; and because Green had no warrant either to arrest petitioner or to search his apartment, Green's presence in that

apartment must be justified by one of the exceptions to the warrant requirement. *See, e. g.,* Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) and cases cited therein.

■ One of the specifically established exceptions to the Fourth Amendment requirements of both a warrant and probable cause is conduct pursuant to consent. *Schneckloth, supra* at 219, 93 S.Ct. 2041.

In *Schneckloth, supra,* the court delineated the constitutionally required qualities of a consent, effective to remove subsequent police conduct from the otherwise controlling requirements of the Fourth Amendment. In an opinion by Mr. Justice Stewart, the court held that before the state can justify a non-custodial search on the basis of consent, it must demonstrate that the consent was in fact voluntary, voluntariness to be determined from the totality of the surrounding circumstances. *Id.* at 248–249, 93 S.Ct. 2041. Although the court further held that knowledge of the right to refuse consent to a waiver of fourth amendment protections is not a prerequisite of a voluntary consent, it nevertheless held that the state bears the burden of demonstrating that the consent was in fact voluntarily given and not the result of duress or coercion, express or implied.[2] *Id.* at 248, 93 S.Ct. 2041.

The issue in this case, however, is not controlled by *Schneckloth, supra. Schneckloth* addressed only the question whether a consent to search actually given was voluntary. This case in the first instance turns on an antecedent inquiry: whether any consent to enter was in fact given, voluntarily or otherwise. Respondents' argument is neither that petitioner gave an express consent nor that petitioner extended an express invitation, which should be deemed a voluntary consent to enter under the Fourth Amendment. Rather, the respondents urge this court to find that petitioner by responding "sure" to Green's request for an interview extended an implied invitation, from which can be inferred a voluntary consent to enter. This court need not reach the issue whether this form of consent was voluntary under the teachings of *Schneckloth, supra;* for it finds as a matter of fact, based on the credibility of witnesses heard *ore tenus,* that petitioner never consented to Officer Green's entry.

Petitioner testified at the evidentiary hearing that at the time the police came to his apartment, he was aware that the shotgun was not hidden and that there was marijuana in the apartment (Tr. 39, 44). This court finds it difficult to conclude that under those circumstances a reasonably intelligent person would have extended an invitation to a police officer to enter his apartment.

That petitioner did not extend an invitation to Officer Green is supported by other testimony. Petitioner testified that about a week before the incident in question, another policeman knocked at his door and asked, as did Green, whether he could speak with him. When petitioner responded "sure", the policeman made no attempt to enter, remained outside, and stated his business. In addition, uncontradicted testimony indicates that petitioner gave Green no physical or verbal gesture to enter other than his response "sure".[3]

■ Upon the evidence as a whole, this court is firmly convinced that petitioner never extended an invitation, ex-

---

2. Schneckloth v. Bustamonte, *supra* as the present case addressed the issue of consent in the context of a *habeas* proceeding.

3. The respondents heavily rely upon Robbins v. MacKenzie, 364 F.2d 45 (1st Cir. 1966). Their reliance, however, is misplaced. In *Robbins,* the petitioner made affirmative gestures of invitation. The court stated at 48:

". . . [A] policeman who identifies himself and his purpose from the other side of a closed door has every reason to assume that the act of unlocking and opening the door, without more, is a consent to talk, and that the walking back into the room is an implied invitation to conduct the talking inside."
The petitioner in the case at bar made no movement other than opening the door.

press or implied, to Officer Green. Officer Green took the initiative in gaining entry to the apartment. That petitioner neither physically nor verbally resisted the entry cannot be taken as an invitation or consent to enter. *See, e. g.,* Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The burden was on Green to obtain an express invitation or consent to enter, not on petitioner to deny affirmatively one assumed by Green to exist. Petitioner's response "sure" to a request for an interview is so equivocal an invitation to enter that this court is unwilling to presume it a consent under the Fourth Amendment. The constitutional protections of the Fourth Amendment cannot so easily disappear with the intoning of the word "consent" unless it appears that an express consent was in fact voluntarily given. The fabric of constitutional liberties is woven of a thread strong enough to withstand any attempted *fait accompli* by a presumptuous policeman, perceiving any open door as an implied invitation to enter.

### IV

Even if this court were to find that petitioner had consented to Officer Green's entry, the plain view doctrine would not be applicable as it appears from the record that Officer Green's discovery of the shotgun was not inadvertent. *See* Coolidge v. New Hampshire, *supra* 403 U.S. at 466, 91 S.Ct. 2022. This court will follow the plurality rule of *Coolidge,* (limiting the "plain view doctrine" to evidence inadvertently discovered), until such time as there has been a definite ruling otherwise by the U.S. Supreme Court or the Court of Appeals for the Fourth Circuit.

Though Officer Green's declared intent in going to the petitioner's apartment was to question him about his possessing a sawed-off shotgun and to apprise him of complaints of excessive noise, the testimony of Officer Green and others indicate that Officer Green anticipated or at least suspected the discovery of the very shotgun he found.

The following exchange between Officer Green and the court confirms as much:

THE COURT: . . . the thing that concerns me about this whole matter was . . . if he (Officer Green) had just gone there on the first one (complaint about excessive noise), but he is actually looking for a weapon, it seems to me. Somebody had told him —this wasn't an inadvertent discovery of a weapon lying around because somebody had told him and that was one of the reasons he went. Isn't that right?

OFFICER GREEN: Yes, sir. That was one of the complaints.

THE COURT: And so that's one of the things your eyes were glancing around for when you entered . . . the apartment, wasn't it?

OFFICER GREEN: Yes.

As was discussed above, when the initial intrusion that brings the police within plain view of evidence is supported not by a warrant but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. Coolidge v. New Hampshire, *supra* at 465, 91 S.Ct. 2022. But when the discovery is anticipated, when the police know in advance the location of evidence and intend to seize it, a different situation exists. The Supreme Court has never legitimized a planned warrantless seizure on plain view grounds. Rather, as Mr. Justice Stewart observed in *Coolidge, supra* at 471, 91 S.Ct. at 2041 n. 27:

"A long line of cases, . . . make it clear beyond doubt that the mere fact that the police have legitimately obtained a plain view of a piece of incriminating evidence is not enough to justify a warrantless seizure."

The discovery itself must be inadvertent.

Officer Green testified that he had been told by one Ritchie that petitioner had a shotgun in his apartment and that he had personally seen it. (Tr. 6). He further testified, however, that he thought he lacked probable cause to obtain a warrant and that he went to peti-

tioner's apartment merely to question him about the shotgun. Whether Green's information would have supported a warrant is not in issue here. What is significant, however, is that Green made no effort to obtain one. His self-serving declarations of lack of probable cause serve only to expose a disinclination for warrants that this court's constitutional mandate cannot countenance.

## V

 The history of the fourth amendment has been one ·of accretion. Yet throughout its dynamic history, one governing principle has consistently guided its interpretation and application: except under certain carefully defined circumstances, the state's intrusion into an area in which a citizen has a reasonable expectation of privacy is unreasonable unless authorized by a valid warrant. *See, e. g.*, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685 (1969); Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Camara v. Municipal Court of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

 The constitutional prescription for a warrant, except in unusual cases, indicates a profound desire by our founding fathers to ensure the privacy of citizens against governmental encroachment. The realization of this desire is of central concern to this court. The argument that law enforcement becomes more difficult and uncertain by requiring an arrest and search to be effected with a warrant cannot vitiate the requirements of the Fourth Amendment, United States v. Di Re, 332 U.S. 581, 68 .S.Ct. 222, 92 L.Ed. 210 (1948); the argument that the warrant requirement is a needless formality because a citizen will be protected against the introduction of evidence seized without probable cause is too narrow a view of Fourth Amendment interests. "It makes all the difference in the world whether one approaches the Fourth Amendment as the Court approached it in Boyd v. United States, 116 U.S. 616 [6 S.Ct. 524, 29 L. Ed. 746], in Weeks v. United States, 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed. 652], in Silverthorne Lumber Co. v. United States, 251 U.S. 385 [40 S.Ct. 182, 64 L. Ed. 319], in Gouled v. United States, 255 U.S. 298 [41 S.Ct. 261, 65 L.Ed. 647] [requiring warrants as the general rule], or one approaches it as a provision dealing with a formality. It makes all the difference in the world whether one recognizes the central fact about the Fourth Amendment, namely, that it was a safeguard against recurrence of abuses so deeply felt by the Colonies as to be one of the potent causes of the Revolution, or one thinks of it as merely a requirement for a piece of paper." United States v. Rabinowitz, 339 U.S. 56, 69, 70 S.Ct. 430, 94 L.Ed. 653 (1950) (Frankfurter, J., dissenting). Because only a valid warrant vindicates to the fullest extent the constitutional balance between privacy and law enforcement, a police officer must make every reasonable effort to secure a warrant. The narrowly carved exceptions to the warrant requirement are poor substitutes, which will be strictly interpreted and narrowly applied.[4] The Supreme Court has made clear that these exceptions apply only in the presence of "exigent circumstances" justifying warrantless conduct. *See, e. g.*, Coolidge v. New Hampshire, *supra*. There were no "exigent circumstances" in this case justifying

4. For a discussion of the exceptions to the warrant requirement *see*, United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L. Ed.2d 427 (1973); Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); and Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (search incident to a lawful arrest); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (hot pursuit); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stop and frisk); Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) (consent); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plain view); 68 Am.Jur.2d, Search and Seizure, §§ 37–59.

**548**

Officer Green's failure to attempt to secure a warrant. The inference is inescapable that Officer Green went to petitioner's apartment with the purpose in mind of seizing the gun. *See, e. g.*, United States v. Curran, 498 F.2d 30, 32 (9th Cir. 1974).

■ This court will not permit a police officer to circumvent the warrant requirement of the fourth amendment by the subterfuge of manuevering himself within plain view of evidence known to exist. *See, Coolidge, supra* 403 U.S. at 470, 91 S.Ct. 2022, n. 26. In closing, Mr. Justice Bradley's admonition in Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535 (1886), almost a century ago, repeated by the Court many times since, is worth repeating here:

> "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficiency, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."

The court, based on its evidentiary hearing, finds as a matter of fact that Officer Green's discovery of the sawed-off shotgun in petitioner's apartment was not inadvertent.

For the above reasons, this court will grant *habeas* relief and order respondent to release petitioner immediately, subject to the right of the state to retry petitioner within a reasonable time. Such an order will this day be entered.