471 So.2d 172 (1985)
Deguster Blake ZEIGLER, Appellant,
v.
STATE of Florida, Appellee.
No. AM-383.
District Court of Appeal of Florida, First District.
June 18, 1985.
*173 Michael Allen, Public Defender, Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Appellant's prior conviction for the second degree murder of Sheila Smith was appealed to this court, which reversed on the authority of Tascano v. State, 393 So.2d 540 (Fla. 1980). Zeigler v. State, 396 So.2d 1 (Fla. 1st DCA 1981). Prior to the commencement of his new trial, appellant filed a motion to suppress an inculpatory statement he made to Jacksonville Sheriff's Department deputies. Following the trial court's denial of that motion, appellant pled nolo contendere to the offense of manslaughter, reserving his right to appeal the trial court's denial. The state stipulated below that the issue is dispositive. Because the trial court erred in denying the motion to suppress appellant's statement, we reverse and remand with directions to discharge appellant.
Sheila Smith was found shot to death in her Jacksonville apartment. Their investigations led police to believe appellant, who had lived with the victim, was responsible. Police subsequently learned that appellant was in Quincy acting strangely, and attempting to conceal his automobile. The Jacksonville police sent a dispatch to Quincy requesting that officers in that town pick appellant up. Appellant was arrested in Quincy that evening, informed of his Miranda rights, and placed in a county jail cell. At the time of his arrest appellant advised Quincy officers that he did not wish to make a statement until he had talked to his lawyer.
The next morning Detective Parker of the Jacksonville Sheriff's Department and his partner arrived in Quincy to transport appellant to Jacksonville. Appellant was removed from his cell, and the detectives introduced themselves and again advised appellant of his rights. Detective Parker then requested that appellant sign a waiver *174 of rights form which included the statement, "I do not want to talk with a lawyer at this time." Detective Parker testified that he was not seeking a waiver of appellant's rights at that time, but that he asked appellant to sign the form merely to acknowledge that he had read and understood it. After appellant signed the form, he told the detectives that he did not want to make a statement until he talked with his lawyer. Shortly thereafter appellant was placed in a police car and taken to Jacksonville.[1]
As is frequently the case, the evidence concerning the matters discussed on the trip back to Jacksonville was in sharp dispute. Appellant testified that the detectives discussed the number of individuals on death row who, because they refused to talk to police, were charged with first degree murder instead of some lesser crime. Detective Parker testified that the conversation was general and pleasant, and only touched on the subject of murder when appellant inquired concerning the penalties for that offense. Upon arrival in Jacksonville, according to the testimony of Detective Parker:
I pulled up behind the Duval County Jail and told them [sic] him that this was the county jail, that if he wanted to make a statement or say anything he could at this time because there wasn't going to be no tomorrow, the ballgame was over, he was going to be booked in jail. And he made the return comment that  as I recall, you boys or you guys have been good to me, let's go to the office and I'll tell you what you want to know. And then we drove over underneath the Police Memorial Building and went to an interview room at the homicide division.
Thereafter appellant gave the statement sought to be suppressed. Detective Parker did not advise appellant of his rights after leaving Quincy, and appellant gave the statement without again requesting to see his attorney. Detective Parker's testimony, on cross-examination, reveals the following:
Q. When you arrived at the rear of the Duval County Jail, who broached the subject of a statement?
A. I did.
Q. And your purpose was, of course, to obtain a statement, right?
A. If he desired to make one.
Q. And did you desire him to make one?
A. I would have been derelict if I hadn't solicited a statement in the performance of my duties.
Q. I mean, he didn't just out of the blue say, "may I give a statement," or anything like that?
A. No.
The exchange behind the Duval County Jail was not initiated by appellant and was clearly "interrogation," Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), conducted after appellant had invoked his right to counsel, without counsel having been furnished to him, and without any showing that, subsequent to involving his right to counsel, he knowingly and voluntarily waived that right. Accordingly, the trial court erred in denying appellant's motion to suppress. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Silling v. State, 414 So.2d 1182 (Fla. 1st DCA 1982). Compare, Barfield v. State, 402 So.2d 377 (Fla. 1981).
We have considered and find wholly without merit the state's contention that our prior decision in Zeigler v. State, 404 So.2d 861 (Fla. 1st DCA 1981), decided the constitutional admissibility of appellant's statement adversely to him, thus, under the principle of collateral estoppel precluding relitigation of the same issue here. The prior decision involved Zeigler's conviction of manslaughter for the unrelated killing of one Diane Williams, in which the sole dispositive issue was the Williams Rule (Williams v. State, 110 So.2d 654 (Fla. 1959)) error of the trial court in allowing *175 the state to introduce Zeigler's statement concerning the shooting of Sheila Smith. In that opinion we said: "We find merit in only one point raised by appellant." Id. at 862. The state argues here that since the court found only one error, it obviously must have rejected Zeigler's contention in that appeal that the statement regarding the Smith shooting was inadmissible for constitutional reasons, although the opinion does not mention that issue. Aside from other reasons which would preclude our giving "collateral estoppel" effect to the prior ruling as urged by the state, we find that the threshold requirement that there must be a determination of material fact by a valid and final judgment has not been met. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In the prior case the "one point" having merit was the question of admissibility of the collateral crime evidence, which we decided favorably to appellant based on the Williams Rule violation. Whether it was also inadmissible because obtained in violation of appellant's Fifth, Sixth, and Fourteenth Amendment rights thus became moot, and neither required nor received consideration by this court.
One other issue needs to be addressed. After consideration of the briefs and the record, this court sua sponte raised the question whether testimony given by appellant at his first trial would be admissible against him in a subsequent trial, notwithstanding any illegality in obtaining appellant's inculpatory statement. We further inquired as to what effect, if any, would the state's stipulation as to dispositiveness have on this court's disposition of this appeal.[2] Appellant had testified in response to the testimonial and written evidence of his confession introduced at the first trial. Appellant's testimony regarding the events for which he stood trial was essentially the same in most material respects as that introduced by the state by means of the confession, as appellant himself acknowledged from the witness stand. If appellant's testimony from his first trial would be admissible at any subsequent trial, then the issue he raises here concerning his confession would not necessarily be dispositive to his case, and hence would not be a proper ground for appeal on a plea of nolo contendere. Brown v. State, 376 So.2d 382 (Fla. 1979); Leisure v. State, 429 So.2d 434, 435 (Fla. 1st DCA 1983).
We focus first upon the fact (as previously noted) that this case is here by way of a joint stipulation between appellant and the state that the issue of the voluntariness of the confession absent the presence of counsel was in fact dispositive of the prosecution's case. This court has previously held that such a stipulation is sufficient to establish the dispositiveness of an issue concerning a confession, even though such issue would otherwise be deemed not dispositive as a matter of law. Jackson v. State, 382 So.2d 749 (Fla. 1st DCA 1980), aff'd, 392 So.2d 1324 (Fla. 1981). Therefore, unless this court is prepared to "go behind" the stipulation of the parties in an effort to ascertain whether the issue is truly dispositive, we would be bound to decide the issue reserved for review by the defendant, and thus would have no occasion for independent examination of the record to determine whether, even if the trial court erred in denial of the motion to suppress, other evidence in the record could be used equally as well to establish guilt. After consideration of the supplemental briefs and oral argument, the court finds no basis for questioning the parties' stipulation that the issue originally briefed is dispositive.
Appellee suggests that the question of whether an issue preserved for review upon a nolo contendere plea is dispositive is jurisdictional, and hence a proper subject for review here, citing Turner v. State, 429 So.2d 318, 319 (Fla. 1st DCA 1982). In Turner, however, on rehearing we receded from language in our original opinion in *176 which we indicated that an appellate court could determine for itself whether an issue stipulated by the parties as being dispositive to a case was in fact dispositive, stating: "... [W]e do not address any question of whether or not a stipulation entered into between the state and defense should be honored on appeal... ." Id. at 320. Accordingly, Turner is not controlling, and we may look elsewhere for guidance on the question of "going behind" stipulations of dispositiveness.
In a nearly unaminous en banc decision, the Third District Court of Appeal in Finney v. State, 420 So.2d 639 (Fla. 3d DCA 1982) considered the same basic question before us in this case and concluded that stipulations as to dispositiveness are binding on the appellate courts. In Finney, the court granted rehearing en banc to resolve a conflict between the Finney case and Furr v. State, 420 So.2d 341 (Fla. 3d DCA 1982). In both cases, the defense and state had stipulated that a motion to suppress denied by the trial court would be dispositive on appeal from the defendant's nolo contendere plea. In Finney, the court reexamined the issue raised, found it non-dispositive, and remanded to the trial court for further proceedings. In Furr, the court relied on the stipulation in determining the issue raised was dispositive on appeal.
In resolving the conflict, the third district examined Brown v. State, 376 So.2d 382 (Fla. 1979), in light of Jackson v. State, 382 So.2d 749 (Fla. 1st DCA 1980), aff'd, 392 So.2d 1324 (Fla. 1981). The court noted that Brown's requirement that an issue be dispositive before the issue could be raised on appeal from a nolo contendere plea was grounded on a concern for judicial efficiency; that is, unless the issue raised is dispositive, and appeal will not end litigation in the particular case, but will only postpone it. 376 So.2d at 384. The Finney court noted that the joint stipulation procedure sanctioned in Jackson was similarly bottomed; the trial court would have no need to hear testimony to establish whether or not the issue was dispositive, as would be the case absent the stipulation.[3] Moreover, the Finney court, recognizing that the binding nature of a stipulation of dispositiveness supported the parties in their exercise of litigational strategy, observed:[4]
A stipulation is the parties' recognition that, for whatever reason, they have presented all of the evidence that they care to and each is willing to abide by the appellate consequences regarding the grant or denial of the motion to suppress.
420 So.2d at 642. For these reasons, we hold that a stipulation voluntarily entered into by all parties that an issue preserved for appeal by a defendant's nolo contendere plea is dispositive will be so considered by this court. As a result, we do not re-examine the stipulation entered into here between appellant and the state.
Even were we to do so, however, we believe no independent grounds for affirming the trial court's ruling has been demonstrated. Appellant's testimony offered at his first trial would be inadmissible at any *177 subsequent trial (as fruit of the poisonous tree of his inculpatory statements to Detective Parker) unless the state could meet its burden of proving that appellant would have testified as he did even had there been no "inducement" because of the state's illegal activity. Harrison v. United States, 392 U.S. 219, 224-5, 88 S.Ct. 2008, 2011, 20 L.Ed.2d 1047 (1968); Hawthorne v. State, 408 So.2d 801, 804 (Fla. 1st DCA 1982), rev. den., 415 So.2d 1361 (Fla. 1982). We doubt seriously the state could meet such a burden here, given the otherwise entirely circumstantial nature of the evidence adduced at appellant's trial, and hence the lessened need for appellant to attempt to affirmatively contradict the state's case. At best, appellant's prior testimony could be introduced for impeachment purposes, not substantive evidence. Harris v. United States, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); Sections 90.103(2) and 90.801(2), Florida Statutes (1983).
REVERSED and REMANDED with directions to discharge the appellant.
ZEHMER, J., concurs with written opinion.
BOOTH, J., dissents.
ZEHMER, Judge, concurring.
I fully concur with the majority opinion, not because of any insensitivity to the fact that appellant is being released, but because I am convinced the rules of law discussed in the majority opinion have been correctly applied in this case. These rules, having descended from our nation's highest appellate courts, are deemed necessary to the enforcement of substantial legal rights.
The rules governing the suppression of improperly obtained incriminating statements protect substantial constitutional rights, and the courts stand as the last bulwark against the erosion or deprivation of those rights.
The rule preventing us from engaging in selective disapproval of stipulations made by the state and the accused is necessary to assure that appellate courts are not thrust into the position of reviewing acts of the parties or their attorneys instead of judicial acts of the court below. The trial court was not required to look behind the state's stipulation to determine if it was provident or improvident, appropriate or inappropriate, much less whether it was ill advised. The trial court's conditional acceptance of the nolo contendere plea did not constitute a judicial ruling on the validity or propriety of that stipulation, but only that he acknowledged it as the agreed basis for the plea and appeal. If we are going to be required to look behind a stipulation for the first time on appeal to determine whether it is proper, without having the benefit of a previously made factual record supporting a ruling by the court below, we shall become a de novo court rather than an appellate court.
BOOTH, Judge, dissenting:
The defendant's two most recent homicides, the murder of Diane Williams and the murder of Sheila Smith, are interrelated and are set out here chronologically:
January 1, 1979 - Defendant murdered Diane Williams and was released on bond.
April 21, 1979 - Defendant murdered Sheila Smith. (This victim had furnished the bond to secure the release of defendant after the murder of Diane Williams.)
April 23, 1979 - Defendant gave the out-of-court statement with regard to Smith murder which is in question here.
April 25, 1980 - Defendant was tried and convicted of second degree murder in the Sheila Smith murder. Statement was received expressly without defense objection as to voluntariness, and defendant took stand and testified corroborating that statement as supporting his claim of self-defense.

July 21, 1980 - Defendant was tried and convicted of manslaughter in the murder of Diane Williams.
April 6, 1981 - This court, in Case No. WW-151 [396 So.2d 1 (Fla. 1st DCA 1981)], reversed the Smith murder conviction due to the failure of the trial court *178 to give a "Tascano" instruction on maximum/minimum penalties.
October 20, 1981 - This court, in Case No. XX-86 [404 So.2d 861 (Fla. 1st DCA 1981)], reversed the conviction for the murder of Diane Williams for an evidentiary violation ("Williams Rule") in admitting defendant's statement concerning the Smith murder. Defendant raised voluntariness of statement as an issue on appeal but it was not ruled on.[[1]]
May 14, 1982 - On remand in the instant case, defendant filed a motion to suppress statement, asserting violation of Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.
May 28, 1982 - Defendant pleaded nolo contendere to manslaughter in the death of Sheila Smith, reserving the right to appeal the denial of the suppression motion.
June 10, 1982 - Notice of appeal filed in this court in AM-383 from conviction in the Smith murder.
The trial court's order denying motion to suppress[2] reviews the background of the *179 statement, including appellant's signing of the waiver of rights form and factors bearing on voluntariness. On the merits of the trial court's determination, if properly before us at this time, I would affirm. However, I would hold that, in view of the defendant's sworn testimony at trial, corroborating the out-of-court statement, the statement itself is unnecessary for a conviction, and, stipulation notwithstanding, the cause should be remanded to allow withdrawal of the nolo contendere plea. The record before us shows that in the 1980 trial for the murder of Sheila Smith, defendant took the stand and exercised his right to testify in his own behalf.[3] The *180 statement was admitted expressly without defense objection as to voluntariness. In the prior trial of this case, defendant testified, under questioning by his own counsel, that his statement was "to the best of his recollection" and "generally correct."[4] This is the same statement defendant now seeks to suppress.
Defendant's testimony at the prior trial was never challenged in any court as involuntary or "poisoned" by the previous exculpatory statement. Defendant's prior testimony was in accord with the exculpatory statement claiming self-defense. Further, defendant's counsel relied on defendant's statement in the 1980 trial to show that defendant (1) had cooperated with law enforcement officers, and (2) had been consistent in his statement and testimony.
Defendant's testimony at his first trial is admissible in his second trial,[5] even if he does not choose to take the witness stand in the second trial. In Pendleton v. State, 348 So.2d 1206, 1208 (Fla. 4th DCA 1977), the court states what is the general rule as follows:
In general, in the absence of a statute governing the situation, it has generally been held that a defendant who has taken the stand in his own behalf in a criminal prosecution, testifying without asserting his privilege against self-incrimination has waived the privilege as to the testimony given so that it may be used against him in a subsequent trial in the same case. See Warde v. United States (1946), 81 U.S.App.D.C. 355, 158 F.2d 651. Even if the defendant does not take the stand at a second trial, that does not prevent the use of his testimony given in a former trial if it would otherwise be admissible. See Edmonds v. United States (1959), 106 U.S.App.D.C. 373, 273 F.2d 108; United States v. Hughes (C.A. 2 1969), 411 F.2d 461. In United States v. Grunewald (D.C.N.Y. 1958), 164 F. Supp. 644, that court stated: "... Nor can it be argued persuasively that the use of the former trial testimony upon the present retrial constitutes improper pressure upon the defendant to take the stand, thus invading his privilege to remain mute. Presumably the defendant told the truth when he testified at the former trial with respect to the same transactions. The prosecution's use of that testimony constitutes no more pressure than the prosecution's use of any other admission made by the defendant. That the prosecution's proof may tend to incriminate the defendant and that the *181 defendant may deem it desirable to take the stand does not spell out improper pressure. Inferences flowing from properly adduced evidence do not constitute a coercive force in violation of a defendant's Fifth Amendment privilege."
In United States v. Houp, 462 F.2d 1338, 1340 (8th Cir.1972), a defendant's testimony given in a state criminal trial was held admissible in the subsequent federal trial even though he did not take the stand and testify in the second trial, the court holding:
Appellant concedes the general rule that prior testimony is admissible. He asserts, however, that the general rule does not apply when the testimony is admitted to rebut testimony of witnesses other than the defendant. We find no authority for that exception to the rule. There is no question that a person may waive his privilege against self-incrimination. There is no collateral attack here on whether the privilege was effectively waived in the State trial. Once the privilege is effectively waived, the information given is admissible at any subsequent trial. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047; Orth v. United States, 4 Cir., 252 F. 569; United States v. Grunewald, D.C., 164 F. Supp. 644; Annot. 5 A.L.R.2d 1404.
In United States v. Nell, 570 F.2d 1251 (5th Cir.1978), defendant's testimony from his earlier trial in 1974 was read to the jury in his second trial in 1976, the court holding that appellant did not claim he was motivated to take the stand in the first trial because of illegally obtained evidence, and rejecting defense counsel's claim that he "was forced to put his client on the stand in the first trial."
The parties' stipulation as to dispositiveness should not control this court's determination of that issue, particularly where the evidence sought to be suppressed is plainly not dispositive. On the record before us, there appears no challenge, or basis for a challenge, to the voluntariness with which the defendant took the stand and testified in his own behalf in the prior murder trial for the death of Sheila Smith. That testimony is available for use in the retrial of the defendant without regard to the admissibility of the out-of-court statement. The State's ill-advised stipulation, based on its unfamiliarity with the background of the case or misunderstanding of the law on use of former testimony, is indeed unfortunate but does not obscure the right of this court, in proper circumstances, to set aside the stipulation and remand for the determination of the dispositiveness issue.
Therefore, I would relinquish jurisdiction to the trial court to review the background and basis of the stipulation as to dispositiveness, giving the defendant an opportunity to challenge, if he can, the admissibility of his testimony in the prior trial. If that testimony is admissible, as I believe it surely is, then defendant should be permitted the opportunity to withdraw his plea and proceed to trial.
Accordingly, I must respectfully dissent.
NOTES
[1] We have noted, as appellant points out, the failure to afford appellant a first appearance in Gadsden County under Rule 3.130(b), Florida Rule of Criminal Procedure, a factor which we find it unnecessary to discuss in view of our disposition based on the Miranda violation.
[2] We requested and received supplemental briefs and heard oral argument on these additional issues. We commend counsel for both sides for their additional efforts and for the quality of their presentations, which have proven very helpful to the court.
[3] "Sanctioning agreements as to dispositiveness does away with the time-consuming process which occurs when an appellate court questions whether an issue is legally dispositive, relinquishes jurisdiction to the trial court for a hearing on that issue, finds the issue not dispositive, dismisses the appeal, and permits the defendant to withdraw his plea." 420 So.2d at 644, n. 4 (Pearson, J., concurring specially).
[4] This case does not raise the question posed by Judge Baskin in dissent in Finney, of whether the state should ever be allowed on appeal to confess error, disavow the stipulation on grounds of mistake, request that the defendant be allowed to withdraw his plea of nolo contendere, and that the state be permitted to proceed with trial. 420 So.2d 646-7. Whether or under what circumstances relief from any such mistake on the part of the state might be granted at either the trial or appellate level in another case is a question not before us here, since the issue of the binding effect of the state's stipulation below was belatedly raised only by this court. We emphasize that nothing here said should be considered as a suggestion that the state might successfully urge mistake under any circumstances, nor are we suggesting time limits for any such action.
[1] On remand in this case, a "negotiated plea" of guilty of manslaughter, without reservation of issue for appeal, was entered, and counsel informed the court at oral argument that defendant is presently incarcerated for that offense and that the conviction is not subject to appeal due to the negotiated plea.
[2] Trial court's order, in pertinent part:

On April 21, 1979, homicide detectives Gerald Parker and Gordon Bass of the Jacksonville Sheriff's Office investigated the death of Sheila Renee Smith whose dead body was found in the apartment she shared with defendant.
They learned that the star-crossed couple had a stormy and violent relationship replete with verbal threats by defendant to kill Ms. Smith.
They also determined that defendant's car was missing from the apartment complex. They further ascertained that Ms. Smith had been shot to death and that defendant was on bond in another homicide case where Ms. Williams had also been shot to death.
During the course of the investigation, Officer Bass received a telephone call from a woman in Quincy, Florida, advising that defendant was at her residence acting oddly and had attempted to conceal his car from public view.
Officer Parker contacted Quincy police to arrest and hold defendant for homicide  which was done on April 22, 1979. The Quincy police, upon arrest, advised defendant of his constitutional rights and he made no statement.
The next day, April 23, 1979, Officers Parker and Bass arrived in Quincy and again advised defendant of his rights and he made no statement. However, the defendant did sign a "Constitutional Rights" form which reads in part:
"WAIVER OF RIGHTS
I have read the above statement of my rights and understand the statement and understand what my rights are. I am willing to make a statement and answer questions. I do not want to talk with a lawyer at this time. I have not been promised anything in exchange for a statement. I have not been threatened, and there has been no pressure to get me to make a statement or answer questions."
The form was signed by defendant and witnessed by Officers Parker and Bass (copy attached).
The defendant was forthwith transported back to Jacksonville by the officers. The return trip was relatively uneventful as testified to by defendant and the investigators. There is, however, a conflict here. The defendant contends veiled threats were made as to the effect of non-cooperation. The officers deny patent or veiled threats of any kind and recollect conversation in a different context. However, it is uncontradicted that the officers treated defendant well and did not abuse him.
The defendant testified that he slept "quite a bit" on the trip back to Jacksonville.
Before being booked into the Duval County Jail, the defendant gave the officers a statement concerning the homicide of Ms. Smith.
... .
DISCUSSION OF POINTS RAISED ON MOTION TO SUPPRESS
... .
Defendant was denied the right of counsel; was questioned by officers despite his refusal to give statement and his request for counsel; he was induced into giving a statement concerning the Smith homicide:
... .
It is generally ignored or given contemptuous dismissal by defense counsel that the defendant signed a written waiver of rights containing his waiver of counsel and expressing his willingness to make a statement. (See copy attached.) Subsequently, however, he refused to make a statement and requested aid of counsel  though not necessarily contemporaneously done. Here we have conflicting positions taken by defendant. Is the written waiver and consent of greater dignity because of its form  or is the verbal request to be given more weight because it favors the rights of the defendant over those of the State?
If both positions are of equal dignity and each binding, at the time given, then is a defendant thereafter unable to revoke one or the other? Or, by taking inconsistent positions has he so immunized himself that anything said thereafter  even if entirely voluntary  cannot be used against him? If so, it is a stunning breakthrough in legal thought.
Having taken a firm position of equivocation, was he forever bound by one or the other? If so, which? Or did he have the right  voluntary and in furtherance of his own considered best interest  to make a generally self-serving statement? If he had such a right  then were the officers accorded the legal right to receive it and reduce it to writing? Or were they governed by another more stringent code of conduct which precluded them from lawfully receiving that which was voluntarily given by defendant. If the latter be true, then it is a quantum leap in rights of defendant over those of the State.
... .
At the time of events critical to the motion to suppress the defendant was a mature 46 years of age with a criminal record dating back to 1957, with 19 arrests and four charges of murder. At the two trials before me it was established that he had fathered a child and operated a business with supervision over a number of employees. He was a worldly and sophisticated man. His knowledge and experience with procedures of the criminal law were vast. (See copy of sentence attached.) In determination of the issues raised in the motion to suppress, I have considered all of the above and foregoing and have been aided by my experiences and observations made at two trials and numerous hearings and proceedings.
[3] At the time defendant's statement was proffered at the trial in 1980, the record reveals the following colloquy (Case No. WW-151, R.Vol. III, p. 356):

MR. KING: Your Honor, at this time the State would move the Court for an oral order finding that the statements made by the Defendant Zeigler on that date were freely and voluntarily made. I believe Florida law requires an acknowledgment by the Court.
THE COURT: What say you, Mr. Rathbone?
MR. RATHBONE: Your Honor, the only problem that I have with the statement is the references about the bond that are included in it. I would request the Court  I see nothing wrong with bringing the statement in, but perhaps  I believe there is some case law on the fact that perhaps we could strike out that portion.
Thereafter, the defendant's counsel indicated various references in the statement to the bond which he wished the court to strike and made a motion to that effect. Counsel for the State argued that the jury was aware of the bond having been posted by the victim and that this had been referred to by prior witnesses as grounds for the animosity between defendant and the victim because the victim was threatening to go off defendant's bond. The court then inquired as follows (R.Vol.III, pp. 358-359):
THE COURT: All right. I deny the motion as to the striking the portion as to reference to bond. As I understand it, Mr. Rathbone, you have no objection other than those portions to the entry of the statement by the defendant?
MR. RATHBONE: That's correct, Your Honor, and that's based on previous rulings of this Court, too.
THE COURT: There being no objection as just stated by the defense other than that just stated, I find that the statement was freely and voluntarily given and I find that it is admissible.
Defendant's statement was read into evidence (beginning at page 365 of the record) at his trial without objection as to voluntariness. As indicated above, the only objection made by counsel was to the references in the statement to defendant's being out on bond.
No objection was made to the statement's admissibility in defendant's motions in limine (R.Vol.II, pp. 151, 154), in his motion for new trial (R.Vol.VI, p. 825), or in the statement of judicial acts filed with the notice of appeal in this court (R.Vol.I, pp. 86-88).
Defense strategy was to emphasize the fact that defendant had been consistent in his statements and testimony as to what occurred in the apartment at the time of the killing. The record shows, for example, the following opening statement by defense counsel (R.Vol.II, p. 177):
[T]here is only one person who can tell us what happened in that little one-bedroom apartment at Stonemont Street on the 21st of April, 1979, and that person is my client, Blake Zeigler. He's never hesitated in stating what happened, never. He's never changed his story from the very outset.
At page 179 of the record, defense counsel states:
[H]e [defendant] gave the police a complete statement. That's basically just what I've told you.
I believe that you will see that this story that I've given you is fully supported by the evidence that is going to be presented here... .
[4] Defense counsel relied on the statement of April 23 in his defense. On redirect examination of the defendant (R.Vol.V, p. 678), the following occurred:

BY MR. RATHBONE [Defense Counsel]:
Q. On the 23rd of April, Mr. Zeigler, when you made this statement, when you made this statement to the police?
A. Right.
Q.  did it represent  did you tell Detective Parker everything that had happened to the best of your recollection?
A. I did, sir.
Q. Did he ask you specific questions or did he just let you speak?
A. I spoke some, then he had to put it in  you know, he had to get it to where, you know 
Q. Right. But is the statement itself generally correct?
A. It's generally correct.
The defense continued with its strategy into closing argument where the point was made by defense counsel, again, that defendant was cooperative with the law enforcement officers and consistent in his testimony at trial with the prior statement. Thus, at page 758, Volume V of the record, defense counsel told the jury in closing argument:
[T]he last thing that Parker [detective] told us was that Blake Zeigler in that little jail in Gadsden County  I think it was Gadsden County in Quincy, Florida  agreed immediately to give them a statement. Do you remember right on the statement, agreed to give them the statement, and they took the statement here and he told them, he told it the way it happened, the way that he's testified and the best of his recollection of the time.
[5] 22A C.J.S. Criminal Law § 655 at 561. 23 C.J.S. Criminal Law § 892(b) at 511, and cases cited therein.