714 So.2d 527 (1998)
Kwunchai PHUAGNONG, Appellant,
v.
STATE of Florida, Appellee.
No. 96-4705.
District Court of Appeal of Florida, First District.
June 15, 1998.
*528 Nancy A. Daniels, Public Defender; David A. Davis, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Daniel A. David, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Invoking Florida Rule of Appellate Procedure 9.140(2)(a), Kwunchai Phuagnong appeals his conviction for burglary of a dwelling in violation of section 810.02(3), Florida Statutes (1995). In entering the plea of nolo contendere on which the conviction is predicated, he reserved the right to appeal the order denying his motion to suppress evidence seized from his bedroom. The state stipulated on the record below that the outcome of the motion to suppress was dispositive. In the absence of legal justification for the unwarranted search of appellant's bedroom, we reverse.
Initially, we reject the state's contention that we lack jurisdiction to entertain this appeal because there was other evidence against the defendant not subject to the motion to suppress. There was other evidence, to be sure. Cf. Hannigan v. State, 307 So.2d 850 (Fla. 1st DCA 1975). But the issue on which jurisdiction depends is whether denial of the motion to suppress was "dispositive" within the meaning of Florida Rule of Appellate Procedure 9.140(2)(a). See Brown v. State, 376 So.2d 382, 384 (Fla.1979). Here, as in Zeigler v. State, 471 So.2d 172 (Fla. 1st DCA 1985), the state stipulated in the trial court that the outcome of the suppression motion was dispositive.
We focus first upon the fact ... that this case is here by way of a joint stipulation between appellant and the state that the issue of the voluntariness of the confession absent the presence of counsel was in fact dispositive of the prosecution's case. This court has previously held that such a stipulation is sufficient to establish the dispositiveness of an issue concerning a confession, even though such issue would otherwise be deemed not dispositive as a matter of law. Jackson v. State, 382 So.2d 749 (Fla. 1st DCA 1980), aff'd, 392 So.2d 1324 (Fla.1981). Therefore, unless this court is prepared to "go behind" the stipulation of the parties in an effort to ascertain whether the issue is truly dispositive, we would be bound to decide the issue reserved for review by the defendant, and thus would have no occasion for independent examination of the record to determine whether, even if the trial court erred in denial of the motion to suppress, other evidence in the record could be used equally as well to establish guilt....

*529 ....
... For these reasons, we hold that a stipulation voluntarily entered into by all parties that an issue preserved for appeal by a defendant's nolo contendere plea is dispositive will be so considered by this court. As a result, we do not re-examine the stipulation entered into here between appellant and the state.
Zeigler, 471 So.2d at 175-176. The parties stipulated that the order denying the motion to suppress was dispositive. This established, as a matter of fact, that "regardless of whether the appellate court affirms or reverses the lower court's decision, there will be no trial of the case." Morgan v. State, 486 So.2d 1356, 1357 (Fla. 1st DCA 1986). In so stipulating, moreover, the state waived its right to argue otherwise on appeal. This is not a case in which the trial court found an order dispositive "notwithstanding the state's vigorous argument to the contrary." Vaughn v. State, 711 So.2d 64, 64 (1998). We have jurisdiction.
The appellate court's role is a limited one. On review of the trial court's order on the suppression motion, "legal questions are subject to de novo review, while factual decisions by the trial court [viewed in light of constitutionally mandated burdens of proof] are entitled to deference commensurate with the trial judge's superior vantage point for resolving factual disputes." State v. Setzler, 667 So.2d 343, 344-45 (Fla. 1st DCA 1995). These procedural requirements, like others applicable in the trial court, flow from the Fourth Amendment and its reiteration or incorporation in the Florida Constitution. Art. I, § 12, Fla. Const. ("[The] right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures ... shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court."). See Perez v. State, 620 So.2d 1256, 1258 (Fla. 1993).
Writing for the United States Supreme Court, Chief Justice Rehnquist recently described the standard of review that the Fourth Amendment (and so the Florida Constitution by reference to the Fourth Amendment) requires on appellate consideration of probable cause determinations in search and seizure cases:
We think independent appellate review of these ultimate determinations of reasonable suspicion and probable cause is consistent with the position we have taken in past cases. We have never, when reviewing a probable-cause or reasonable-suspicion determination ourselves, expressly deferred to the trial court's determination. See, e.g., Brinegar [v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) ] (rejecting district court's conclusion that the police lacked probable cause); Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (conducting independent review and finding reasonable suspicion). A policy of sweeping deference would permit, "[i]n the absence of any significant difference in the facts," "the Fourth Amendment's incidence [to] tur[n] on whether different trial judges draw general conclusions that the facts are sufficient or insufficient to constitute probable cause." Brinegar, [338 U.S.], at 171, 69 S.Ct., at 1308. Such varied results would be inconsistent with the idea of a unitary system of law. This, if a matter-of-course, would be unacceptable.
... Independent review is ... necessary if appellate courts are to maintain control of, and to clarify the legal principles. See Miller v. Fenton, 474 U.S. 104, 114, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985)....
Finally, de novo review tends to unify precedent and will come closer to providing law enforcement officers with a defined "`set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement.'" New York v. Belton, 453 U.S. 454, 458, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768 (1981); see also Thompson v. Keohane, 516 U.S. 99, 115, 116 S.Ct. 457, 467, 133 L.Ed.2d 383 (1995)("[T]he law declaration aspect of independent review potentially may guide police, unify precedent, and stabilize the law," and those effects "serve legitimate law enforcement interests").
*530 Ornelas v. United States, 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996). The same reasoning supports independent appellate review where the validity of a search has been found to rest not on probable cause but on consent. Appellate "deference to clearly erroneous findings of fact is not consistent with the review required in Fourth Amendment cases," Setzler, 667 So.2d at 346, even where some evidence may be said to support such findings.
The state has raised no issue of standing on this appeal. We proceed on the premise, therefore, amply supported by the record, that the defense established and the state conceded Mr. Phuagnong's standing. See generally Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). In such circumstances, the prosecution had the burden of justifying a warrantless search and seizure
at the suppression hearing, because the State did not justify the search before the fact, by showing a judge grounds for issuance of a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Jones [v. State], 648 So.2d [669,] 674 [ (1995) ]. As a practical matter, absence of a search warrant in the court file sufficed to shift the burden of going forward to the prosecution. State v. Hinton, 305 So.2d 804, 808 (Fla. 4th DCA 1975); see also State v. Williams, 538 So.2d 1346, 1348 (Fla. 4th DCA 1989). The prosecution also had to demonstrate exigent circumstances, conditions which precluded applying to a neutral and detached magistrate for a search warrant, or some other exception to the warrant requirement. Coolidge; Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).
Setzler, 667 So.2d at 345-46. Here the State contends that law enforcement officers had consent to enter an apartment and that, once in the apartment, a sweep of the home was justified for purposes of officer safety. We find, however, that initial consent to enter the apartment was not proven.
Charged with burglary of a television set, Mr. Phuagnong filed a motion to suppress a television set seized from his apartment bedroom on the basis that it was seized illegally without a warrant.[1] In denying the motion, the trial judge ruled:
Based upon the evidence and testimony in this case, the Court finds that the police officers' entry into the residence of Mr. Joy was consensual. The Court finds that even assuming that there were no words spoken inviting the police officers in the house, that the actions and reactions of Mr. Joy would have indicated it would have been reasonable for the police officers to assume they were being invited into the house at that point in order to see whatever medication Mr. Joy was on at that time.
Therefore, the Court finds the entry into the residence was consensual, that once into the residence that the activities of the officers in no way constituted a violation of either the Defendant's rights or those of Mr. Joy. I'll, therefore, deny the motion to suppress.
Deputy Amunds testified he heard a noise, once he was inside the apartment. (Mr. Joy testified he did not hear the noise.) Deputy Amunds testified that he entered other rooms in the apartment to investigate the noise, saw a television set he thought might have been stolen, and found the appellant. Concluding that Deputy Amunds never had consent to enter the home, we do not need to address the officer safety rationale claimed as justification for the concededly nonconsensual search of Mr. Phuagnong's bedroom.
In the absence of a warrant or exigent circumstances justifying a search, the state had the burden to prove that somebody with apparent authority to do so, see Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), gave the necessary consent freely and voluntarily rather than merely submitting to a claim of lawful authority.

*531 The general rule in search and seizure law is that warrantless searches are per se unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of the exceptions to that rule is that a warrantless search conducted with consent is permissible. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A consent search is valid when the consent is freely and voluntarily given, id., 412 U.S. at 233, 93 S.Ct. at 2050, and when it is conducted within the scope of the consent. United States v. Rackley, 742 F.2d 1266, 1270-71 (11th Cir.1984).
State v. Fuksman, 468 So.2d 1067, 1068 (Fla. 3d DCA 1985). "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of in fact proving that the consent was freely and voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).
Before determining whether consent was given freely and voluntarily, a court must answer the initial question whether consent of any kind was actually given.
The issue in this case, however, is not controlled by Schneckloth, supra. Schneckloth addressed only the question whether a consent to search actually given was voluntary. This case in the first instance turns on an antecedent inquiry: whether any consent to enter was in fact given, voluntarily or otherwise. Respondents' argument is neither that petitioner gave an express consent nor that petitioner extended an express invitation, which should be deemed a voluntary consent to enter under the Fourth Amendment. Rather, the respondents urge this court to find that petitioner by responding `sure' to Green's request for an interview extended an implied invitation, from which can be inferred a voluntary consent to enter. This court need not reach the issue whether this form of consent was voluntary under the teachings of Schneckloth, supra; for it finds as a matter of fact, based on the credibility of witnesses heard ore tenus, that petitioner never consented to Officer Green's entry.
Fankboner v. Robinson, 391 F.Supp. 542, 545 (W.D.Va.1975). Here as in Fankboner, we need not reach the issue of whether consent to enter the apartment was given voluntarily, because the state failed to prove that any consent was given.
On two occasions earlier in the day, according to evidence adduced at the suppression hearingtaken in a light most favorable to the state's positionDeputy Amunds had knocked on the apartment door but nobody had opened the door. This time he accosted a young man who had just left the apartment and prevailed upon him to induce somebody inside to open the door. Deputy Amunds then, according to his own testimony, stepped into the apartment without asking for permission to enter the apartment.
The trial court's finding that "the actions and reactions of Mr. Joy would have indicated it would have been reasonable for the police officers to assume they were being invited into the house" does not reflect the fact that Deputy Amunds was already well inside the "house" before there was any mention of the medicine (Tylenol PM) Mr. Joy was taking.
A positive response to a request to talk does not constitute consent to enter a citizen's home. See Fankboner. In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), the Supreme Court held that consent was not proven in these circumstances:
Taking the Government's version of disputed events, decision would rest on these facts:
At about 7:30 p.m. Detective Lieutenant Belland, an officer of the Seattle police force narcotic detail, received information from a confidential informer, who was also a known narcotic user, that unknown persons were smoking opium in the Europe Hotel. The informer was taken back to the hotel to interview the manager, but he returned at once saying he could smell burning opium in the hallway. Belland communicated with federal narcotic agents and between 8:30 and 9 o'clock went back to the hotel with four such agents. All *532 were experienced in narcotic work and recognized at once a strong odor of burning opium which to them was distinctive and unmistakable. The odor led to Room 1. The officers did not know who was occupying that room. They knocked and a voice inside asked who was there. `Lieutenant Belland,' was the reply. There was a slight delay, some `shuffling or noise' in the room and then the defendant opened the door. The officer said, `I want to talk to you a little bit.' She then, as he describes it, `stepped back acquiescently and admitted us.' He said, `I want to talk to you about the opium smell in the room here.' She denied that there was such a smell. Then he said, `I want you to consider yourself under arrest because we are going to search the room.' The search turned up incriminating opium and smoking apparatus, the latter being warm, apparently from recent use. This evidence the District Court refused to suppress before trial and admitted over defendant's objection at the trial. Conviction resulted and the Circuit Court of Appeals affirmed.
....
Entry to defendant's living quarters, which was the beginning of the search, was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right. Cf. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 [ (1921) ].
Id. at 12-13, 68 S.Ct. 367. The Eleventh Circuit has recently considered the issue of implied or inferred consent and has concluded:
In recognition of this fact, we believe, "[a]s a matter of law, it cannot be said that failure to object to a search equals consent to the search." United States v. McBean, 697 F.Supp. 495, 502 (S.D.Ga.1987), rev'd on other grounds, 861 F.2d 1570 (11th Cir.1988); but cf. United States v. Deutsch, 987 F.2d 878, 883 (2d Cir.1993). We have previously noted our hesitancy to find implied consent (i.e., consent by silence) in the Fourth Amendment context, see United States v. Berry, 670 F.2d 583, 596 (5th Cir. Unit B 1982)(en banc), and we agree with our colleagues in the Ninth Circuit that, whatever relevance the implied consent doctrine may have in other contexts, it is inappropriate to "sanction[] entry into the home based upon inferred consent." United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir.1990). As Judge Ferguson cogently explained:
[T]he government may not show consent to enter from the defendant's failure to object to the entry. To do so would be to justify entry by consent and consent by entry. `This will not do.' Johnson v. United States, 333 U.S. at 17 [68 S.Ct. at 370]. We must not shift the burden from the governmentto show `unequivocal and specific' consentto the defendant, who would have to prove unequivocal and specific objection to a police entry, or be found to have given implied consent.

Id. at 1427-28; cf. United States v. Edmondson, 791 F.2d 1512, 1515 (11th Cir. 1986)(no implied consent to enter defendant's dwelling to effect an arrest when defendant opened his door upon being told to do so by the arresting officer).
United States v. Gonzalez, 71 F.3d 819, 829-830 (11th Cir.1996) (footnote omitted). Here the trial court erred by finding assumed or implied consent. Cf. Flanagan v. State, 440 So.2d 13, 14-15 (Fla. 1st DCA 1983) ("In order to determine whether there was valid consent in this case, it must first be determined whether Taylor consented in fact or whether he merely submitted to the apparent authority of Officer Butler. The evidence here is sufficient to show that Taylor did, in fact, consent. Taylor negotiated with Officer Butler for several minutes before allowing him to enter the trailer. If Taylor had merely submitted to the apparent authority of Officer Butler, it seems more likely that Taylor would simply have let him inside with no questions asked."). The state did not prove that Mr. Joy gave Deputy Amunds consent to enter the apartment. On this record, therefore, he had no lawful right to be where he was when he saw the television set that made Mr. Phuagnong a suspect and led to his warrantless arrest.
*533 The state argues, however, that a written form Mr. Phuagnong executed after Sgt. Way arrived, consenting to (a second) search of his bedroom, authorized the seizure of the television set. But the rule is that where
there is an illegal detention or other illegal conduct on the part of the police, a consent will be found voluntary only if there is clear and convincing evidence that the consent was not a product of the illegal police action. Norman v. State, 379 So.2d 643, 647 (Fla.1980); Bailey v. State, 319 So.2d 22, 28-29 (Fla.1975).
Reynolds v. State, 592 So.2d 1082, 1086 (Fla. 1992) ("The only fact in favor of finding Reynolds' consent to the search voluntary is the report of one of the police officers, introduced into evidence, which states that the officer informed Reynolds of his right to refuse the search. This fact alone is not dispositive.").
The illegal search first of the bedroom then of the bathroom led to Mr. Phuagnong's illegal arrest. He signed the consent form only minutes later, while still illegally detained. His signature on the consent form was plainly "the fruit of the poisonous tree."
... Dunaway and Brown hold that statements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will. Dunaway v. New York, 442 U.S. [200], 218-219, 99 S.Ct. [2248], 2259-2260, 60 L.Ed.2d 824 [(1979)]; Brown v. Illinois, [422 U.S. 590], 601-602, 95 S.Ct. [2254], 260-2261 [45 L.Ed.2d 416] [(1975)]. In this respect those cases reiterated one of the principal holdings of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Florida v. Royer, 460 U.S. 491, 501, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). We do not find clear and convincing evidence in this record that Mr. Phuagnong signed the consent form for reasons independent of "illegal police action." The state did not prove that his consent was "sufficiently an act of free will to purge the primary taint." Wong Sun v. United States, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Reversed.
BARFIELD, C.J., and KAHN, J., concur.
BENTON, J., concurs with written opinion.
BENTON, Judge, concurring.
I concur fully in the judgment reversing the conviction. I would follow the decision in Gonzalez v. State, 578 So.2d 729 (Fla. 3d DCA 1991), which is applicable here, in my opinion.
NOTES
[1] Six days later a search warrant did issue authorizing a search of the apartment for property stolen in Bay County. This later-issued warrant did not and could not authorize any search that had already taken place.